## Hopper v. Richland Township

*Ronald P. Koerner,* for plaintiffs.
*James W. Dunn, Jr.,* for defendants.

WETTICK, *J.,* April 25, 1978—This is a petition for a declaratory judgment filed by full-time regular police officers employed by Richland Township.

Defendants are Richland Township, a second class township which has adopted a home rule charter pursuant to the Act of April 13, 1972, P.L. 184, 53 P.S. §1-101 et seq., known as the Home Rule Charter and Optional Plans Law, and the supervisors of Richland Township.

The material facts, as set forth in the record and as stipulated at the January 13, 1978, hearing are not in dispute.

Richland Township, through its supervisors, has adopted a Manual for Police which governs the conduct of police officers employed by the township. Article I, sec. 11 of the manual, which is set forth in footnote 1, requires police officers to complete various physical fitness tests.[1] Failure to

---

1. "The following physical tests are deemed to be minimum entrance standards for any new members and all other members of the Police Department. Each member must choose and complete four (4) of the seven (7) tests listed below. Other tests may be implemented at the discretion of the Chief of Police.

A. *Quarter Mile Run*

Members will be required to run one-quarter mile on an indoor or outdoor track. The maximum allowable time for traversing this distance is 110 seconds.

B. *Situps*

Members will be required to do 15 situps in one minute.

C. *Triple Jump*

Members will be required to traverse an 18 foot span in (3) consecutive jumps.

D. *Push-ups*

Members will be required to do 15 push-ups in one minute.

E. *Pull-ups*

Members will be required to do 4 pull-ups.

F. *Mile Run*

Members will be required to run one (1) mile on an outdoor or indoor track. The maximum allowable time for traversing this distance is ten minutes.

G. *Two Mile Walk*

complete such tests, according to Richland Township's reading of its manual, constitutes just cause for imposing disciplinary action.

Officials of Richland Township testified that they intend to administer physical fitness tests to each member of its police force on an annual basis and failure to successfully complete the tests will result in disciplinary action which may include suspension, demotion or dismissal.[2]

Plaintiffs contend that article I, sec. 11, of Richland Township's Manual for Police is illegal to the extent that it subjects existing members of the Richland Township police force to disciplinary action for failure to meet its physical fitness requirements and request this court to issue a judgment declaring this section of the Manual for Police illegal and void.

I

While both parties wish this issue to be resolved

---

Members will be required to walk (2) two miles on an indoor outdoor track. The maximum allowable time for traversing this distance is 32 minutes.

These physical tests will be administered annually for each member at a time designated by the Chief of Police. Any member that fails to complete the minimum physical fitness tests will have the option of a retest in 60 days. Each member will be required to undergo an annual physical examination to determine the state of health and proper functioning of the various organs of the body. The examination may be performed by a single qualified physician or team of medical examiners designated by the Township. A copy of this examination will be sent to the Chief of Police to be placed in the member's personnel file. The cost of the examination will be borne by the Township."

2. "Richland Township officials have agreed to refrain from implementing this section of its Manual for Police while this litigation is pending in this court."

through this proceeding instituted under the Uniform Declaratory Judgments Act of June 18, 1923, P.L. 840, as amended, 12 P.S. §831 et seq., the parties cannot by agreement confer jurisdiction on this court: Greenberg v. Blumberg, 416 Pa. 226, 206 A. 2d 16 (1965). Thus, we must initially decide whether petitioners may at this time challenge the legality of article I, sec. 11, of Richland Township's Manual for Police through a proceeding under the Uniform Declaratory Judgments Act. In passing on this issue, we are guided by the recent rulings of the Pennsylvania Supreme Court in Liberty Mutual Insurance Co. v. S.G.S. Co., 456 Pa. 94, 318 A. 2d 906 (1974), and Friestad v. Travelers Indemnity Co., 452 Pa. 417, 306 A. 2d 295 (1973), which held that the Declaratory Judgments Act is remedial legislation intended to be liberally construed to reflect the purposes for enactment of the Uniform Declaratory Judgments Act. The "avowed purpose" of the Uniform Declaratory Judgments Act is "to afford relief from uncertainty and insecurity with respect to rates, status and other legal relations" and its language must be construed to accomplish this end. See Northampton Builders' Assoc. v. Northampton Bucks County Municipal Authority, 27 Pa. Commonwealth Ct. 401, 367 A. 2d 800, 802 (1976).

Section 6 of the Uniform Declaratory Judgments Act provides that relief by declaratory judgment may be granted in all civil cases where "an actual controversy exists between contending parties" or "where the court is satisfied that antagonistic claims are present between the parties involved which indicate imminent and inevitable litigation." We believe that the instant controversy falls within section 6's coverage.

Richland Township has in good faith adopted ar-

ticle I, sec. 11, of its Manual for Police and it intends to implement this section by taking disciplinary action against police officers who fail to meet its requirements. Plaintiffs' challenge to article I, sec. 11, of the Manual for Police is bona fide and is made because of the insecurity and uncertainty created by the requirements of article I, sec. 11. Thus, an actual controversy exists between the parties to this litigation within the meaning of section 6 of the Declaratory Judgments Act.

While it may be contended that this court will be rendering an advisory opinion because of the possibility that Richland Township will not follow through with physical fitness testing or that every member of the police force will pass the test, we believe that the controversy is ripe for resolution at this time. If we do not resolve the controversy before disciplinary action is taken, we unnecessarily jeopardize the interests of the party who fails to predict correctly the outcome of the controversy. A ruling arising after disciplinary action has been taken which is adverse to Richland Township may award back pay to a police officer who has not been working and a ruling adverse to the police officer will result in lost pay, demotion or job loss. Moreover, until the legality of article I, sec. 11, of the Manual for Police is settled, Richland Township police officers must live in a state of uncertainty and insecurity with respect to vital employment rights.

Only a proceeding under the Uniform Declaratory Judgments Act will permit this controversy to be resolved without requiring either party to jeopardize financial and employment interests and will eliminate uncertainty and insecurity with respect to plaintiffs' employment rights. Consequently, we rule that this is an appropriate case for declaratory relief.

## II

Plaintiffs' challenge to the legality of the physical fitness requirements of article I, sec. 11, of Richland Township's Manual for Police is based primarily on the provisions of article IX of the Act of June 15, 1951, P.L. 586, as amended, 53 P.S. §811 et seq., hereinafter referred to as the Police Tenure Act, which restrict the power of a municipality to discipline police officers. We initially consider the contention of Richland Township that this legislation does not cover its police officers.

The scope of the Police Tenure Act is set forth in section 811 of this legislation which reads as follows:

"This act shall apply to each township of the second class, to each borough and township of the first class having a police force of less than three members and not subject to sections one thousand one hundred sixty-five through one thousand one hundred ninety of the act, approved the fourth day of May, one thousand nine hundred twenty-seven (Pamphlet Laws 519), known as 'The Borough Code,' and their amendments, nor to sections six hundred twenty-five through six hundred fifty of the act, approved the twenty-fourth day of June, one thousand nine hundred thirty-one (Pamphlet Laws 1206), known as 'The First Class Township Code,' and their amendments."

By enacting the Police Tenure Act and the other legislation referred to in section 811, the legislature intended to establish protections from removal for all police officers, regardless of the size of the police force or the political classification of the municipality. See George v. Moore, 394 Pa. 419, 147 A. 2d 148 (1959). Richland Township concedes that its police officers were previously covered by the Police Ten-

ure Act. However, it is Richland Township's contention that once it became a home rule charter municipality, it was no longer subject to the Police Tenure Act and any decisions regarding discipline and removal of police officers were entrusted to the appropriate township officials, subject only to the provisions of its home rule charter and protections of the United States and Pennsylvania Constitutions.

The question of whether a municipality's adoption of a home rule charter, pursuant to the Home Rule Charter and Optional Plans Law of 1972, places police officers employed by the municipality outside the state legislation providing protection to police officers from removal and other disciplinary action appears to be one of first impression. Neither counsel for the parties nor this court are aware of any decisions on this issue.

Richland Township argues that the legislature adopted the Home Rule Charter and Optional Plans Law of 1972 to give local municipalities the opportunity to control their internal affairs. Historically, decisions regarding the manner in which police protection is provided in this Commonwealth are made at the municipal level and are among the most important functions of local government. Consequently, to effect the purposes for which the Home Rule Charter and Optional Plans Law of 1972 was enacted—i.e., to transfer the control of matters primarily of local interest from the state to the municipality—we must, according to Richland Township, rule that the Police Tenure Act has been superseded by the provisions of the Home Rule Charter and Optional Plans Law which empower a municipality to exercise traditional municipal powers and functions.

Plaintiffs, on the other hand, contend that the legislature through passage of the Home Rule Charter and Optional Plans Law did not intend to jeopardize existing statutory protections afforded police officers by the Police Tenure Act. Petitioners support this contention by citing section 1-302(b)(v) of the Home Rule Charter and Optional Plans Law, titled Limitation on Municipal Powers, which bans a municipality from enacting "any provision inconsistent with any statute heretofore enacted by the General Assembly affecting the rights, benefits or working conditions of any employe of a political subdivision of the Commonwealth."

The Police Tenure Act is clearly a statute affecting the rights of employes of a political subdivision of the Commonwealth. Thus, by the express terms of the Home Rule Charter and Optional Plans Law, Richland Township lacks the power to enact a manual for police whose provisions are inconsistent with the Police Tenure Act unless we conclude that the legislature intended the language within the Home Rule Charter and Optional Plans Law prohibiting a political subdivision from enacting provisions inconsistent with a statute" affecting the rights . . . of any employe of a political subdivision" to be given a special meaning.

The extensive limitations which section 1-302 of the Home Rule Charter and Optional Plans Law place on the power of a home rule charter municipality to regulate local matters subject to state regulation and to regulate local matters in a manner inconsistent with state regulation negates any contention by Richland Township that the purpose behind the Home Rule Charter and Optional Plans Law was to empower a municipality which adopted

a home rule charter to pass on local issues free from state restriction. To the contrary, this section of the Home Rule Charter and Optional Plans Law evinces a clear legislative intent to continue to regulate many matters that are of significant concern to local municipalities. See, e.g., Deer Creek Drainage Basin Authority v. County Board of Elections, 475 Pa. 491, 381 A. 2d 103 (1977).

A municipality which has not adopted a home rule charter cannot exercise any powers or perform any functions in the absence of a specific grant of authority from the legislature. By enacting the Home Rule Charter and Optional Plans Law, the legislature intended only to permit a municipality to act without receiving a specific grant of authority from the Commonwealth. The provisions of section 1-301 of the Home Rule Charter and Optional Plans Law which empower a municipality to exercise any powers and perform any functions "not denied by the Constitution of Pennsylvania, by its home rule charter or by the General Assembly at any time" show that the legislature did not intend to permit a home rule charter municipality to supersede state legislation.[3]

---

3. There are appellate decisions which hold that local enactments of municipalities chartered under other home rule legislation prevail over conflicting state legislation. However, these decisions consider home rule legislation which expressly gives priority to enactments of municipalities chartered under this legislation over state legislation on matters of local concern. See, e.g., Ebald v. Philadelphia, 387 Pa. 407, 128 A. 2d 352 (1957), which held that Philadelphia, pursuant to the First Class City Home Rule Act, has authority to enact a disability compensation program for its employes that did not meet the standards mandated by state legislation providing disability compensation to police and fire employes through out the state, and Greenberg v. Bradford City, 432 Pa. 611, 248 A. 2d

For these reasons, we rule that the legislature intended that the provisions within section 1-302 of the Home Rule Charter and Optional Plans Law barring a municipality from enacting provisions inconsistent with any statute affecting rights of employes of political subdivisions be given their plain meaning and we, therefore, hold that a municipality which has adopted a home rule charter pursuant to the Home Rule Charter and Optional Plans Law cannot enact a manual for police which is inconsistent with the Police Tenure Act.[4]

## III

Because we hold that the Home Rule Charter and Optional Plans Law of 1972 bars a municipality which has adopted a home rule charter from enacting any provisions which are inconsistent with the Police Tenure Act, we reach the question of whether article I, sec. 11, of Richland Township's Manual for Police is in violation of the Police Tenure Act.

To support its contention that article I, sec. 11, of

51 (1968), which held that a city which adopted a home rule charter under the optional third class city charter law had authority to enact schedules of compensation for its police and fire employes which did not meet standards mandated by state legislation.

4. This construction of the Home Rule Charter and Optional Plans Law raises no constitutional issues because Article IX, §2, of the Pennsylvania Constitution, which requires the General Assembly to provide the procedures by which a home rule charter may be framed and adopted, specifically provides that "[a] municipality which has a home rule charter may exercise any power or perform any function not denied by this Constitution, by its home rule charter or by the General Assembly at any time."

the Manual for Police is illegal, plaintiffs rely on section 2 of the Police Tenure Act, as amended, 53 P.S. §812, which reads as follows:

"No person employed as a regular full time police officer in any police department of any township of the second class, or any borough or township of the first class within the scope of this act, with the exception of policemen appointed for a probationary period of one year or less, shall be suspended, removed or reduced in rank except for the following reasons: (1) physical or mental disability affecting his ability to continue in service, in which case the person shall receive an honorable discharge from service; (2) neglect or violation of any official duty; (3) violating of any law which provides that such violation constitutes a misdemeanor or felony; (4) inefficiency, neglect, intemperance, disobedience of orders, or conduct unbecoming an officer; (5) intoxication while on duty. A person so employed shall not be removed for religious, racial or political reasons. A written statement of any charges made against any person so employed shall be furnished to such person within five days after the same are filed."

Plaintiffs are employed as regular full-time police officers of a township of the second class and are not probationary employes.[5] Plaintiffs are subject

---

5. At oral argument, Richland Township argued that it was not within the scope of section 2 of the Police Tenure Act because as a home rule municipality, it is no longer a township of the second class. Because we have ruled that the legislature intended to provide the protections of the Police Tenure Act to police officers employed by municipalities which adopt a home rule charter pursuant to the 1972 Home Rule Charter and Optional Plans Law, we must conclude that the legislature intended Richland Township to remain a township of the second class for purposes of the Police Tenure Act.

to suspension, removal or reduction in rank if they fail to complete successfully the physical fitness requirements of article I, sec. 11, of the Manual for Police. Thus, Richland Township may, consistent with the Police Tenure Act, implement article I, sec. 11, of its Manual for Police through suspending, removing or reducing in rank a police officer who fails to complete successfully its requirements only if such failure constitutes one of the five grounds for suspension, removal or reduction in rank enumerated within the Police Tenure Act.

Obviously, Richland Township does not rely on grounds three—violation of a law—and five—intoxication. We will, therefore, confine our discussion to grounds one, two and four.

The first ground for removal is a physical or mental disability affecting a police officer's ability to continue in service. Richland Township, citing an excerpt in the November, 1976 L.E.A.A. Newsletter, Vol. 6, No. 5, p. 12, which summarizes an L.E.A.A.-financed police fitness project, contends that police officers who are physically fit are more likely to perform effectively in a crisis, are less likely to miss work or qualify for early retirement from on-the-job injuries and are more mentally alert.

Plaintiffs, on the other hand, question the relevance of Richland Township's physical fitness standards for police work. They contend that in Richland Township—a sparsely populated and predominately rural area—the police officer works primarily in a car or in an office and whether or not a police officer can meet the physical fitness standards of the Manual for Police has little to do with effective performance.

It is not unreasonable for Richland Township officials to conclude that a police officer who keeps

himself or herself in good physical condition will be a better police officer and that any officer who is in good physical condition will be able to meet the requirements of article I, sec. 11. However, we believe that the language "physical or mental disability *affecting his ability to continue in service,"* (Emphasis supplied) as used in the Police Tenure Act, requires for suspension, removal or reduction in rank a finding that an individual police officer cannot satisfactorily perform his or her job because of his or her physical or mental condition. And there is little question that a police officer who cannot meet the physical fitness requirements of article I, sec. 11, may nevertheless be able to satisfactorily perform his or her job.

Arguably, a police officer's failure to meet the physical fitness requirements of article I, sec. 11, of the Manual for Police constitutes "neglect or violation of any official duty" or "inefficiency, neglect, intemperance, disobedience of orders or conduct unbecoming an officer," as these terms are used in the second or fourth grounds for disciplinary action. However, because of the tenuous relationship between physical fitness, as defined by article I, sec. 11, and satisfactory job performance and because failure to meet the requirements of article I, sec. 11, is not an indication of indifference to the job, public or one's superior police officers, we will not construe these provisions of the Police Tenure Act in such a broad manner. Because the Police Tenure Act also protects police officers from removal for religious, racial or political reasons, the legislature apparently enacted the provisions permitting suspension, removal or reduction in rank only for five specified grounds to provide protection from removal for other than political, religious and racial

reasons. To broadly construe these specified grounds for discharge will defeat this legislative purpose. We therefore hold that suspension, discharge or reduction in rank for failure to meet the physical fitness requirements of article I, sec. 11, of Richland Township's Manual for Police is not encompassed by any of the five grounds enumerated within the Police Tenure Act and that suspension, removal or reduction in rank for such grounds is therefore barred by the Police Tenure Act.

## IV

There is solid evidence that police officers in good physical condition may be more effective. Richland Township is to be commended for being one of the first municipalities within the Commonwealth to develop realistic physical fitness standards for its police officers.

In the present case, we have ruled only that these standards cannot be implemented through suspension, discharge or demotion in rank. This ruling does not preclude Richland Township from encouraging its police officers to be physically fit through other means. For example, this ruling does not bar Richland Township from (a) requiring its police officers to participate in physical fitness programs, (b) from requiring police officers to meet its physical fitness standards in order to be hired or promoted or (c) from providing financial incentives to police officers who meet its physical fitness standards. Furthermore, this ruling does not bar Richland Township from suspending, removing or reducing in rank police officers who cannot effectively perform their jobs because of their poor physical condition.

## V

Because we have ruled that this controversy can be resolved through a proceeding under the Uniform Declaratory Judgments Act, that Richland Township is subject to the terms of the Police Tenure Act and that the Police Tenure Act bars Richland Township from suspending, removing or reducing in rank police officers who fail to pass the physical fitness requirements of article I, sec. 11, we will enter an order of court granting plaintiffs appropriate declaratory relief.[6]

### ORDER

And now, April 25, 1978, it is hereby decreed that no person employed by Richland Township as a regular full time police officer, with the exception of police officers appointed for a probationary period of one year or less, may be suspended, removed or reduced in rank for failure to complete the physical fitness requirements of article I, sec. 11, of Richland Township's Manual for Police.

---

6. The other issues raised in plaintiffs' petition were resolved at the January 13, 1978 hearing.