## Health Services for Third Class Cities

GORNISH, *Acting Attorney General*, YAKOWICZ, *Solicitor General*, ANDERSON, *Deputy Attorney General*, June 30, 1978—We have been asked to furnish you with an opinion concerning the legal authority of the Departments of Health and Environmental Resources to cease providing health services to certain third class cities, including the licensing and inspection of public eating

and drinking places. It is our opinion, and you are advised, that your departments are not only authorized but required to discontinue such services.

Between 1961 and 1970, the cities of Lower Burrell, New Kensington and Arnold, along with 10 other third class cities, enacted ordinances surrendering to the Department of Health their responsibility for providing public health services. The Department of Health accepted this responsibility subject to the understanding that the cities would eventually have to take it back. Later an arrangement was made with the Department of Environmental Resources (DER) whereby DER assumed some of the responsibility, including the inspection of public eating and drinking places.

In 1975, the Department of Health notified the 13 cities concerned that they would have to resume their public health services by January 1, 1976. As of May 1978, five of those cities have reestablished their own health departments but eight have not. In October of 1977, the Department of Health notified the remaining eight cities that it and DER would completely discontinue the health services as of July 1, 1978. However, in December of 1977, the General Assembly reduced the budget of DER's Bureau of Community Environmental Control by $400,000, making it necessary to move up the date for discontinuance of services to March 15, 1978. Since the cities have not taken up where your departments have left off, there is presently a lapse in the health services provided. In this situation, we have been asked by certain members of the General Assembly and the mayors of three of the cities to advise you as to whether you can legally discontinue the services when the effect is that no health services are provided at all.

Third class cities, except those that have adopted Home Rule Charters, are governed by The Third Class City Code of June 23, 1931, P.L. 932, 53 P.S. §35101 et seq. Article XXIII of the code requires each third class city to create a board of health. Section 2301, 53 P.S. §37301, provides: "Each city shall, by ordinance, create a board of health as herein provided, or, in lieu thereof, council shall be the board of health."

Section 2305, 53 P.S. §37305, provides: "The board shall appoint as a health officer a person with some experience or training in public health work . . . " Sections 2306 and 2307, 53 P.S. §§37306, 37307, charge the health officer and the board of health with the duties of enforcing the laws of the Commonwealth and the rules, regulations and orders of the Department of Health.

These provisions are not discretionary but mandatory. Third class cities *must* provide the health services described. Moreover, there is no provision in The Third Class City Code that authorizes a city to transfer its responsibilities for public health to the Department of Health, nor is the department authorized to accept, or compel, such transfer. This is in contrast to the laws applicable to boroughs and townships which explicitly authorize such transfers (both voluntary and involuntary) under certain circumstances. See the Administrative Code of June 7, 1923, P.L. 498, as amended, 71 P.S. §532; The Borough Code of February 1, 1966, P.L. (1965) 1656, as amended, 53 P.S. §§48101, 56611, 66961.

It is therefore our opinion that any city that is subject to The Third Class City Code is obliged to perform the health services specified in the code and may not shift those functions to the Department of Health.

However, third class cities which have adopted home rule charters under the Home Rule Charter and Optional Plans Law of April 13, 1972, P.L. 184, as amended, 53 P.S. §1-101 et seq., may be exempt from the provisions of The Third Class City Code. Section 301 of that act, 53 P.S. §1-301, provides:

"A municipality which has adopted a home rule charter may exercise any powers and perform any function not denied by the Constitution of Pennsylvania, by its home rule charter or by the General Assembly at any time. All grants of municipal power to municipalities governed by a home rule charter under this act, whether in the form of specific enumeration or general terms, shall be liberally construed in favor of the municipality."

There are certain restrictions on this broad power, contained in section 302, 53 P.S. §1-302, the only pertinent one being subsection (c) which provides: "Acts of the General Assembly in effect on the effective date of this act that are uniform and applicable throughout the Commonwealth shall remain in effect and shall not be changed or modified by this act." Although this provision has not been interpreted by the courts, it is arguable that The Third Class City Code is not uniform and applicable throughout the Commonwealth and, hence, that a Home Rule Charter city is exempt from the public health requirements of that code. In Greenberg v. Bradford City, 432 Pa. 611, 248 A. 2d 51 (1968), the Supreme Court held that an exception from the powers granted to third class cities under the Optional Third Class City Charter Law of July 15, 1957, P.L. 901, 53 P.S. §41101 et seq., did not require observance of the provisions of The

Third Class City Code, reasoning that to rule otherwise would render the Optional Third Class City Charter Law nugatory.

Thus, it can be argued that a third class city which has adopted a home rule charter under the Home Rule Charter and Optional Plans Law is no longer bound by The Third Class City Code to provide health services to its citizens. However, the question before us is not whether third class cities under home rule continue to be bound by The Third Class City Code, but whether the Department of Health is required or permitted to provide such services under any circumstances. In our view, it is not.

State agencies derive their duties and responsibilities from statutes enacted by the General Assembly. As indicated above, there is no statutory authority for the Department of Health, or DER, to provide health services to third class cities. On the contrary, prior to the enactment of the Home Rule Charter and Optional Plans Law in 1972, third class cities were required to provide those health services themselves.* While the enactment of that law may have removed the mandatory requirement imposed on those third class cities that have adopted charters, there is absolutely nothing in that law, or in any other law, which purports to confer such duties on the Department of Health or DER.

More particularly, the specific responsibility for

---

*The Optional Third Class City Charter Law, supra, enacted in 1957, prohibits a city from limiting powers granted to it by acts of the General Assembly relating to public health. However there is no similar provision in the Home Rule Charter and Optional Plans Law.

the licensing and inspection of public eating and drinking places is contained in the Act of May 23, 1945, P.L. 926, as amended, 35 P.S. §655.1 et seq. Section 2 of that act, 35 P.S. §655.2, provides:

"From and after a period of six months after the effective date of this act, it shall be unlawful for any proprietor to conduct or operate a public eating or drinking place without first obtaining a license, as herein provided. Such license shall be issued by the health authorities of cities, boroughs, incorporated towns and first-class townships . . . No license shall be issued until inspection of the premises, facilities and equipment has been made by the licensor, and they are found adequate to the protection of the public health and comfort of patrons. . ."

Again, this language is mandatory and there is no provision relating to third class cities in this or any other law authorizing or permitting the transfer of such responsibility by third class cities to the state. Additionally, this is a law that is "uniform and applicable throughout the Commonwealth" and, as such, has not been changed or modified by the Home Rule Charter and Optional Plans Law. See 53 P.S. §1-302, supra.

In conclusion, the Departments of Health and Environmental Resources have neither a statutory duty nor authority to provide health services to citizens of third class cities. Accordingly, in the absence of such statutory duty or authority, you have no discretion and are compelled to discontinue such services. This is so regardless of whether third class cities have adopted Home Rule Charters or are still governed by The Third Class City Code.