Elizabeth N. Marshall, Mayor of the City of York v. James S. A. Bentzel et al. William L. Adams, Elmer E. Aughenbaugh and James E. Hooker, Appellants.

Argued December 8, 1978, before Judges CRUMLISH, JR., BLATT and MACPHAIL, sitting as a panel of three.

*Wentworth D. Vedder*, with him *William J. Al-thaus*, and *Morris, Vedder & Ream*, for appellants.

*Frederick S. Spangler*, with him *Harry J. Rubin*, and *Liverant, Senft and Cohen*, for appellees.

OPINION BY JUDGE BLATT, February 5, 1979:

This is an appeal from a declaratory judgment rendered by the Court of Common Pleas of York County, which held that the City Council (Council), and not the Mayor of the City of York (City) had the legal authority to fix the salaries of the Business Administrator, Director of Public Works and Director of Public Safety of the City.[1]

The facts as stipulated by the parties indicate that during the years from 1968 through 1975, the salaries of the Business Administrator, and the Directors of Public Works, Public Safety and Community Devel-

---

[1] The Court also found that the Council had fixed the salary of the Business Administrator at $21,079.00, that of the Director of Public Works at $18,404.00, and that of the Director of Public Safety at $18,404.00.

opment (Directors) were based on amounts specified in ordinances or resolutions adopted by Council or were based on amounts specified in personnel budgets submitted by the Mayor "in connection with the budget ordinances adopted by the Council."

On November 18, 1975 and on December 3, 1975, respectively, the Mayor submitted to the Council a proposed budget ordinance for the year 1976 requesting lump-sum appropriations for the various city departments and a personnel budget in support of the proposed budget ordinance in which the proposed 1976 salary of the Business Administrator was listed at $21,079.00 and that of the other Directors at $18,404.00 each. On December 30, 1975, the Council adopted a budget ordinance for the year 1976 in which the lump-sum appropriations for the City Departments were fixed at amounts lower than those proposed by the Mayor and also adopted a resolution fixing the salary of the Director of Community Development at $21,-500.00.

On January 12, 1976, the Mayor issued "an executive order which promulgated a standard compensation plan for the year 1976" placing the salaries of the Business Administrator and the Directors of Public Safety and Public Works at the amounts contained in his December 3, 1975 "personnel budget," (Business Administrator at $21,079.00, and Directors of Public Works and Public Safety at $18,404.00) and that of the Director of Community Development at $21,500.00. On February 2, 1976, however, the Mayor issued another "executive order which promulgated a series of revisions to the standard compensation plan for the year 1976," in which the salaries of the Business Administrator and the other two Directors likewise were designated at $21,500.00 each. On March 19, 1976, the Council adopted a resolution fixing the salaries of the Bus-

iness Administrator and the Directors of Public Safety and Public Works at $21,079.00, $18,404.00 and $18,-404.00, respectively. Subsequently a petition for declaratory judgment was filed by the Mayor, requesting a declaration that he had the authority to fix the salaries of the Directors. The Council as defendants requested by way of New Matter a declaration that they had the authority to fix the salaries. The Directors, who were joined as additional defendants, requested a declaration that their salaries had been lawfully fixed in the amounts determined by the Mayor ($21,500.00 each). From a judgment declaring that the Council had the authority to fix the salaries, the Mayor and the Directors appeal.

In 1962, the City adopted a form of government known as the Mayor-Council Charter Plan pursuant to the authority of the Optional Third Class City Charter Law[2] (Charter Law). Pursuant to the plan, the City adopted the York City Code (City Code). This was subsequently amended in 1969.

In claiming authority to fix the salaries in question, the Mayor relies on Section 2-56 of the City Code[3] which provides:

Salaries and wages paid to employees of the City shall be standardized throughout the City government insofar as such standardization is consistent with the needs of the City government. For these purposes the Business Administrator shall prepare a standard compensation plan which the Mayor, following his review and approval, shall promulgate by executive order. The Mayor, subject to the provisions of the budget, may create and abolish officers and posi-

---

[2] Act of July 15, 1957, P.L. 901, *as amended*, 53 P.S. §41101 et seq.

[3] York, Pennsylvania Ordinance No. 2 (1962) §409 *amended by* Ordinance No. 15 (1969) §9.

tions of employment when the same are not otherwise provided by law or ordinance.

The Council contends, on the other hand, that its authority is pursuant to Section 607 of the Charter Law, 53 P.S. §41607 which provides in pertinent part:

> (c) The compensation of the controller, treasurer and department heads shall be fixed by the council.

We are faced, therefore, with clearly conflicting provisions governing the authority to fix compensation and the question of which controls must be found in the Charter Law which enabled the City to adopt its present form of government.

Section 303 of the Charter Law, 53 P.S. §41303 specifically provides in pertinent part:

> Each city governed by an optional form of government pursuant to this act shall, *subject to the provisions of and limitations prescribed by this act,* have full power to:
>
> (1) Organize and regulate its internal affairs, and to establish, alter, and abolish offices, positions and employments and to define the functions, powers and duties thereof and fix their term, tenure and *compensation;* (Emphasis added.)

It is clear that a municipality has no power to enact an ordinance except as authorized by the legislature, *Conley v. Joyce,* 27 Pa. Commonwealth Ct. 468, 366 A.2d 1292 (1976), and that an attempt to enact local legislation not in conformity with the appropriate enabling legislation renders the local legislation invalid, *Taylor v. Abernathy,* 422 Pa. 629, 222 A.2d 863 (1966). The Directors argue here, however, that the intent of the Charter Law was to vest extensive power and authority in the City to regulate its own affairs, and that the

limitations found in the enabling act are only applicable to the extent that the City does not legislate to the contrary. We find this argument, however, to be without merit, for such an interpretation would render Section 303 of the Charter Law totally meaningless. We believe that when the legislature authorized the adoption of a local charter plan "subject to the *provisions* of and *limitations*" of the Act, with regard to fixing "term, tenure and compensation" the legislature meant exactly that. Faced with a similar argument regarding the provisions of the First Class City Home Rule Charter,[4] our Supreme Court in *Cali v. Philadelphia,* 406 Pa. 290, 301, 177 A.2d 824, 830 (1962) stated:

> The enabling Act . . . did not give, as the City contends, absolute and unrestricted home rule to . . . [the City]. On the contrary, the Act specifically provides that . . . [the City] may frame and adopt its own local-government Charter, but such Charter shall be subject to such restrictions, limitations and regulations as may be imposed by the Legislature.

The Directors argue in support of the Mayor's position that the Supreme Court's decision in *Greenberg v. Bradford City,* 432 Pa. 611, 248 A.2d 51 (1968), stands for the proposition that *home rule charter* action taken contrary to state legislative action is nevertheless valid. We believe, however, that the lower court correctly distinguished that case on the grounds that the *Greenberg* case dealt with the power of a municipality under a home rule charter to enact ordinances which conflict with *other state acts* when the law deals with matters of local concern; it did not suggest that a local government may adopt ordinances

---

[4] Act of April 21, 1949, P.L. 665, *as amended,* 53 P.S. §13101 et seq.

which contravene the *enabling act itself*. As Justice ROBERTS said in his dissenting opinion in *Greenberg*:

It seems to strain the bounds of logical reasoning to contend that the city regulations enacted *under* the enabling act can ignore a provision of the *same* act. (Emphasis in original.)

432 Pa. at 617, 247 A.2d at 54.

The Directors further argue that, even if the statutory authority to set their salaries rests with the Council, the City Code provision constitutes a delegation of that authority. The lower court properly held that, in the absence of any constitutional, statutory or inherent power of the Council to delegate such authority, and in the face of a specific State legislative mandate that Council perform the function of salary-fixing, the power to do so was clearly non-delegable.

Finally, the Directors argue that the action of the Council in fixing their salaries by resolution was ineffective because it was not done in the form of an ordinance subject to the Mayor's approval or veto. We find, however, that Section 607(b) of the Charter Law which relates to the salaries of department heads merely requires that they be "fixed by council" and it is only Section 607(c) of that law, which relates to salaries of elected officials, that requires such salaries to be fixed by ordinance. If the legislature intended the Council to set the salaries here in question by ordinance, it would have so provided.

The order of the lower court is therefore affirmed.

## ORDER

AND Now, this 5th day of February, 1979, the Order of the Court of Common Pleas of York County, of July 25, 1977, in the above-captioned matter is hereby affirmed.