Keith A. Eichenlaub; Charles S. Shoemaker, and District Council 86, of the American Federation of State, County and Municipal Employees, AFL-CIO, by its Trustee Ad Litem Pat Salvatore, Appellants *v.* City of Lock Haven; Frank L. Taggart, City Manager; Lock Haven Civil Service Commission, and Larry E. Coploff, Chairman, Appellees.

Submitted on briefs May 2, 1984, to Judges WIL-LIAMS, JR., BARRY and PALLADINO, sitting as a panel of three.

*Lee W. Jackson, Kirschner, Walters, Willig, Weinberg & Dempsey,* for appellants.

*Larry E. Coploff, Williamson, Coploff & Hanna,* for appellees.

OPINION BY JUDGE BARRY, July 20, 1984:

This appeal results from an order of the Court of Common Pleas of Clinton County which sustained preliminary objections in the nature of a demurrer filed by the appellees, the City of Lock Haven (City), the

Lock Haven Civil Service Commission (Commission), Frank Taggart, City Manager and Larry Coploff, Chairman of the Commission and dismissed a petition for review of a governmental action filed by appellants, Keith Eichenlaub, a City policeman, Charles E. Shoemaker, a City resident and District Council 86, American Federation of State, County and Municipal Employees, the exclusive bargaining agent for the City policemen.

The facts are not in dispute. The City, a third class city, is organized under the Optional Third Class City Charter Law (Optional Charter Law), Act of July 15, 1957, P.L. 901, *as amended*, 53 P.S. §§41101-41625 (Supp. 1984-85). Pursuant thereto, the Commission adopted rules and regulations which permitted individuals who were not members of the City's police force to apply, be tested and be hired for positions as officers, including Chief of Police, on the City's police force. In early 1981, the Chief of Police resigned his position. Pursuant to these rules and regulations, the City accepted applications for the position from both members and non-members of the police force. All of the applicants were tested and despite the fact at least one member of the force passed the exam, the appellees appointed as Chief of Police on July 11, 1982, James Belcher, a non-member of the force.

Appellants filed the present lawsuit, claiming the actions of the appellees violated Section 2002 of the Third Class City Code (Code), Act of June 23, 1931, P.L. 932, *as amended*, 53 P.S. §37002 (Supp. 1984-85), which provides:

The mayor shall designate, from the force, the Chief and other officers who shall serve as such officers *until their successors are appointed* and *qualified.* The chief of police shall

be designated by the mayor and may be demoted without cause in the same manner, but not to any rank lower than the rank which he held at the time of his designation as chief of police. (Emphasis added.)

The appellees filed preliminary objections in the nature of a demurrer, claiming Section 2002 of the Code was not applicable to the City since the City had an optional form of government under the Optional Charter Law. The trial court sustained the preliminary objections and dismissed the lawsuit. This appeal followed.

Appellants claim the trial court erred in dismissing this action, arguing here, as it did there, that Section 2002 of the Code prohibited appellees' actions which are now complained of. Section 303 of the Optional Charter Law allows cities organized thereunder the power to "[o]rganize and regulate its internal affairs and to establish, alter, and abolish offices, positions and employments and to define the functions, powers and duties thereof and fix their term, tenure and compensation . . . ." 53 P.S. §41303(1)(Supp. 1984-85). Section 304 of the Optional Charter Law Provides:

The general grant of municipal power contained in this article is intended to confer the greatest power of local self-government consistent with the Constitution of this State. Any specific enumeration of municipal powers contained in this act or in any other law shall not be construed in any way to limit the general description of power contained in this article, and any such specifically enumerated municipal powers shall be construed as in addition and supplementary to the powers conferred in general terms by this article. All grants of municipal power to cities governed by an optional

plan under this act, whether in the form of specific enumeration or general terms, shall be liberally construed in favor of the city,

53 P. S. §41304 (Supp. 1984-85). Furthermore, the following section provides:

Notwithstanding the grant of powers contained in this act, no city shall exercise powers contrary to or in limitation or enlargement of powers granted to the city by acts of the General Assembly which are:

(1) Applicable to a class or classes of cities on the following subjects:

. . . .

(x) Relating to civil service.

. . . .

(2) Applicable in every part of the Commonwealth.

(3) Applicable to all the cities of the Commonwealth.

53 P.S. §41305 (Supp. 1984-85).

In *Greenberg v. Bradford City*, 432 Pa. 611, 248 A.2d 51 (1968), the City of Bradford, which was organized under the Optional Charter Law, enacted compensation standards for firemen and policemen which were lower than the minimum standards of the Third Class City Code. In deciding the minimum standards of the Code did not apply to a city chartered under the Optional Charter Law, the Court held that "cities" as used in Section 305(3) of the Optional Charter Law meant all cities and not just third class cities as urged by the affected employees. Accordingly, as appellants presently point to no provisions similar to Section 2002 of the Code which are applicable either to all cities or throughout the Commonweath, they cannot prevail except under Section 305-(1)(x).

In *Zeloyle v. Bettor,* 371 Pa. 546, 91 A.2d 901 (1952), the Court held that, in third class cities, promotions to or demotions from officer status were not civil service matters as long as the demoted individual was not removed from the force. *Accord Petrillo v. City of Farrell,* 345 Pa. 518, 29 A.2d 84 (1942). The civil service article of the Code contains the following Section:

No person or persons may be appointed to any position whatever in the police department ... without having first passed all the examinations hereinafter provided for, and having been appointed in the manner and according to the terms and provisions and conditions of this article.

53 P.S. §39401. Appellants do not challenge the legitimacy of Belcher's appointment to the City's police force; in fact, they admit he passed the required civil service examination for such appointment. Appellants challenge only his appointment to the office of Chief of Police, claiming Section 2002 of the Code prohibits such appointment. As our discussion shows, however, Section 2002 of the Code is not a civil service provision and as such, does not apply to the City under Section 305(1)(x) of the Optional Charter Law.[1]

Appellants also argue that a determination that Section 2002 of the Code does not apply to the City was not properly decided on the basis of preliminary objections in the nature of a demurrer. In *Greenberg,* however, the trial court sustained a demurrer, holding that the minimum compensation provisions for certain employees did not apply to a city chartered under the

---

[1] Even if Section 2002 of the Code were applicable, our interpretation of that section indicates that it only applies to interim appointments as evidenced by the language "until [the Chief and other officers] successors are appointed and qualified."

Optional Charter Law which decision the Supreme Court affirmed. Appellants' claim is therefore meritless.

### ORDER

AND Now, July 20, 1984, the order of the Court of Common Pleas of Clinton County at No. 1-83-E, entered May 31, 1983, is affirmed.