Michael KATZENMOYER and
Charlotte Katzenmoyer

v.

CITY OF READING,
PENNSYLVANIA,
et al.

Civ.A. No. 00–5574.

United States District Court,
E.D. Pennsylvania.

May 21, 2001.

---

Stephen V. Yarnell, Richard M. Squire and Associates, Wyncote, PA, for plaintiff.

Steven K. Ludwig, Fox, Rothschild, O'Brien & Frankel, Philadelphia, PA, for defendants.

## MEMORANDUM

PADOVA, District Judge.

This matter arises on Defendants' Motion for Judgment on the Pleadings and Plaintiffs' Motion to Amend the Complaint. For the reasons that follow, the Court grants in part and denies in part Defendants' Motion, and grants Plaintiffs' Motion to Amend the Complaint consistent with this memorandum with respect to those counts remaining.

## I. Background

Plaintiffs allege the following facts. The City of Reading is a City of the Third Class. In about 1996, the City adopted a new charter, which changed the government from a commission form government to a city charter form of government. The new charter went into effect on January 1, 1996. Under the new charter, the mayor has certain powers to appoint and dismiss certain officials. The managing director also has the power to remove certain officials from the city government.

In 1998–99, a group of citizens began a campaign to persuade the Council to hold a referendum on implementing a comprehensive trash collection program. The referendum was controversial, and spawned a lawsuit, and the formation of a group called the Citizens for Good Government, established by private trash haulers opposed to the comprehensive trash collection proposal. The referendum failed. In 1999, Defendant Joseph Eppihimer ("Eppihimer"), then a member of the City Council, ran for mayor. Eppihimer, who received substantial financial backing from Citizens for Good Government, was an outspoken opponent of the comprehensive trash collection program. He won the election, and took office on January 1, 2000. The managing director, Steven Bonczek, who had been a supporter of comprehensive trash collection, resigned.

At the time that Eppihimer became Mayor of Reading, Plaintiff Michael Katzenmoyer ("Katzenmoyer") was the Property Maintenance Supervisor, and in that capacity was also the Chief Electrician of the City. Katzenmoyer had been elevated

to those positions by the Public Works department head, D. Michael Mucha ("Mucha"), who was one of Eppihimer's political opponents. Mucha had also reported potential ethics violations by Eppihimer to the City Solicitor, relating to a 1998 incident in which Eppihimer allegedly campaigned in violation of the city charter.

Katzenmoyer alleges that Defendant Jesus Pena ("Pena"), the Human Resources Director, acting at the direction of Eppihimer, terminated Katzenmoyer from his position. Katzenmoyer claims this termination resulted from his political affiliation and his vocal political support for Eppihimer's opponents. In his original complaint, Plaintiffs brought a number of claims under § 1983, the Fourteenth Amendment, the First Amendment, and state law. Katzenmoyer's wife, Charlotte Katzenmoyer brought a claim of loss of consortium. Defendants moved for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c). In responding to Defendants' Motion, Plaintiffs moved to amend the Complaint. In Plaintiff's proposed Amended Complaint, they bring largely the same causes of action, but amend some of the specific allegations. Defendants oppose such amendment on the grounds the amendment would be futile.

At the pre-trial conference held on April 17, 2001, the Court directed the parties to consult regarding the outstanding issues and to attempt to agree to an amended complaint. Defendants' counsel responded with a letter identifying the remaining issues with reference to the Proposed Amended Complaint of March 13, 2001, attached to Plaintiffs' Motion to Amend. Plaintiffs' counsel submitted a letter dated April 23, 2001, identifying those issues still requiring resolution. The parties have been unable to agree to an amended complaint, and request the Court to direct the Plaintiffs to file their amended complaint and to consider a future responsive pleading, or to issue an adjudication on the remaining issues.

In accordance with these submissions, the Court herein decides Defendants' Motion for Judgment with respect to the original Complaint, but grants Plaintiffs leave to amend the Complaint on those Counts for which the proposed Amended Complaint is not futile. Plaintiffs shall file an amended complaint consistent with this memorandum.

## II. Legal Standard

Federal Rule of Civil Procedure 12(c) allows a party to move for judgment on the pleadings "[a]fter the pleadings are closed but within such time as not to delay the trial." Fed.R.Civ.P. 12(c). The Court reviews a motion for judgment on the pleadings pursuant to Rule 12(c) under the same standard as a motion to dismiss pursuant to Rule 12(b)(6). *See Constitution Bank v. DiMarco,* 815 F.Supp. 154, 157 (E.D.Pa.1993). Thus, the court must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the non-moving party. *See National Iranian Oil Co. v. Mapco Int'l, Inc.,* 983 F.2d 485, 489 (3d Cir.1992). The court cannot grant judgment on the pleadings "unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Kruzits v. Okuma Machine Tool, Inc.,* 40 F.3d 52, 54 (3d Cir.1994) (quoting *Society Hill Civic Assoc. v. Harris,* 632 F.2d 1045, 1054 (3d Cir.1980)).

Rule 15(a) of the Federal Rules of Civil Procedure provides that a party may amend its pleading after a responsive pleading is served only by leave of the court, and "leave shall be freely given when justice so requires." Fed.R.Civ.P.

15(a). Although decisions on motions to amend are committed to the sound discretion of the district court, *Gay v. Petsock*, 917 F.2d 768, 772 (3d Cir.1990), courts liberally allow amendments when "justice so requires," and when the non-moving party is not prejudiced by the allowance of the amendment. *Thomas v. State Farm Ins., Co.*, No. CIV.A.99–CV–2268, 1999 WL 1018279, at *3 (E.D.Pa. Nov.5, 1999). An applicant seeking leave to amend a pleading has the burden of showing that justice requires the amendment. *Id.*

 Factors that militate against granting leave to amend are "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment...." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). In assessing futility, the Court "applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." *In re Burlington Coat Factory*, 114 F.3d at 1434. Thus, a court must take all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Id.* (standard for motion to dismiss). Leave to file an amendment should only be denied if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984) (standard for motion to dismiss).

## III. Discussion

In their original complaint, Plaintiffs brought eight counts against the City of Reading, the City Council, Eppihimer, and Pena, alleging claims under 42 U.S.C. § 1983 and various state law claims. Defendants filed a Motion for Judgment on the Pleadings on various theories. Plaintiffs in turn filed a combined Response and Motion to Amend the Complaint. Defendants assert that, largely for the same reasons articulated in their Motion for Judgment on the Pleadings, the amendments are futile with respect to the various claims. Counsel for the parties subsequently stipulated to the dismissal of the City Council from the action.[1]

The Court will address each cause of action in turn as articulated in the original Complaint but, in accordance with the parties' communications to the Court regarding which claims are outstanding, will also address the issues raised in the proposed amendments. Because the parties have stipulated to the dismissal of the City Council, the Court will consider as withdrawn in all respects any motions with respect to claims asserted against the City Council.

## A. Counts I and III: Substantive and Procedural Due Process Claims

Defendants move for judgment on Counts I and III, in which Michael Katzenmoyer asserts § 1983–due process claims. In his original Complaint, Plaintiff failed to specify the basis for asserting that he had a protectable property interest. Pl.'s Compl. at ¶ 10. However, in his proposed Amended Complaint, he asserts that he has a protectable property interest in his employment as Chief Electrician, by virtue of the tenure provisions in the Optional Third Class City Charter Law, 53 Pa.Cons.Stat.Ann. § 39407 (West 1998). Defendants contend that notwithstanding section 39407, Michael Katzenmoyer's position was not tenured because the City,

---

1. The stipulation of dismissal of Defendant City Council of Reading as a party to the action was filed on May 2, 2001. (Doc. No. 13.)

under its optional charter, did not choose to apply the provisions of section 39407 to the electrician's position. The Court agrees with Defendants that, as originally drafted, Counts I and III fail to plead a protectable property interest, but disagrees that the redrafted counts suffer from the same deficiency. Accordingly, the Court dismisses Counts I and III in the original Complaint, but grants Plaintiff leave to file the amended counts as contained in the proposed Amended Complaint.

■ The City of Reading is a third class city organized under the Optional Third Class City Charter Law, 53 Penn.Cons. Stat.Ann. §§ 41101–41625 (West 1998). The Optional Third Class City Charter Law grants cities of the third class the option of adopting a charter, and confers broad powers of self-government and local autonomy subject only to certain limitations prescribed by the act. *See* 53 Penn. Cons.Stat.Ann. §§ 41101 et seq. (West 1998); *Greenberg v. Bradford City*, 432 Pa. 611, 248 A.2d 51, 53 (1968). Section 303 of the law, for example, allows cities organized under the act to "[o]rganize and regulate its internal affairs and to establish, alter, and abolish offices, positions and employments and to define the functions, powers and duties thereof and fix their term, tenure and compensation ..." 53 Pa.Cons.Stat.Ann. § 41303(1) (West 1998). Section 41304 further provides that "[a]ll grants of municipal power to cities by an optional plan under this act, whether in the form of specific enumeration or general terms, shall be liberally construed in favor of the city." 53 Pa.Cons.Stat.Ann. § 41304 (West 1998).

■ Defendants contend that the tenure provisions of section 39407 do not apply, because the City's home rule Charter does not specifically adopt the tenure provisions with respect to Katzenmoyer's position. The Court disagrees that the absence of specific adoption of the tenure provisions in the Charter means that the tenure provisions do not apply. The pertinent section of the Third Class City Code provides:

> All appointments made pursuant to the provisions of this article shall be for and during good behavior, and no employee shall be removed or transferred for any political reasons whatever....

53 Penn.Cons.Stat.Ann. § 39407. The section has the effect of creating an expectation of continued employment without removal or transfer for political reasons. The statute gives no indication of being optional, and is sufficient on its own to create a recognized property right in continued employment. *Balliett v. City of Allentown*, Civil Action No. 92–4713, 1994 WL 719637 (E.D.Pa. Dec. 22, 1994).

■ The Optional City Charter Law specifically incorporates the provisions of the Civil Service Act, of which section 39407 is a part, 53 Pa.Cons.Stat.Ann. § 41415(e) ("Subject to the provisions of Article XLIV, of the act of June 23, 1931 (P.L. 932), known as the 'Third Class City Code' ") (citations omitted). Thus, Third Class cities operating under the Optional Third Class City Law are subject to the provisions of the Civil Service Act. *Cuvo v. Easton*, 678 A.2d 424, 427 (Pa.Cmwlth. 1996). Accordingly, the Court construes any absence of a contrary provision in the Charter to mean that the provisions of section 39407 apply.

■ Defendants further contend that, if there were a conflict between the Charter and the provisions of section 39407, then the latter would not apply. The Court disagrees.[2] Notwithstanding the

---

**2.** Defendants cite the Pennsylvania Supreme Court's decision in *Greenberg v. Bradford City,*

broad grant of powers contained in the act, no city shall exercise powers contrary to or in limitation or enlargement of powers granted to the city by acts of the General Assembly which are:

> (1) Applicable to a class or class of cities on the following subjects: ...
>
> (x) Relating to civil service .... [or]
>
> (2) Applicable in every part of the Commonwealth. [or]
>
> (3) Applicable to all the cities of the Commonwealth.

53 Pa.Cons.Stat.Ann. § 41305 (West 1998). Here, Plaintiff challenges his termination, rather than demotion, thus falling under the tenure provisions of the civil service code. *See Petrillo v. City of Farrell,* 345 Pa. 518, 29 A.2d 84, 87 (1942) (distinguishing demotion from removal under the Third Class City law of 1931); *accord Zeloyle v. Bettor,* 371 Pa. 546, 91 A.2d 901, 903 (1952) (holding that promotions or demotions from officer status not civil service matters so long as the individual was not removed). Thus, to the extent the Charter might be deemed to conflict with the provisions of section 39407, the rules of the latter, which relate to civil service in Third Class Cities, would apply under section 41305(1)(x).

432 Pa. 611, 248 A.2d 51 (1968), in which the court held that the city, operating under the Optional Charter Law, properly enacted compensation standards for firemen and policemen that were lower than those provided for in the Third Class City Code. *Id.* at 52. In making this determination, however, the Court relied upon an analysis of 53 Pa.Cons. Stat. § 41305(3), and held that "cities" applied to all cities, and not just third class cities. Accordingly, the compensation standards in the Third Class City Code did not meet the exception of § 41305(3). Here, however, the general provisions in question relate directly to tenure, and thus fall under § 41305(1)(x) rather than § 41305(3).

Plaintiff's proposed Amended Complaint pleads the existence of a protectable property interest in his employment.[3] For that reason, the Court grants Plaintiff leave to file the amended counts.[4]

## B. Count II: 42 U.S.C. § 1983–First Amendment

In Count II, Plaintiff Michael Katzenmoyer claims that he was terminated in retaliation for exercising his First Amendment rights in supporting comprehensive trash collection. The City asserts that Plaintiff has failed to state a cognizable claim against it, and Defendants Eppihimer and Pena assert they are entitled to absolute legislative immunity. The Court will consider each of these assertions in turn.[5]

### 1. Claim against the City

Section 1983 of Title 42 of the United States Code provides a remedy against "any person" who, under the color of law, deprives another of his constitutional rights. 42 U.S.C.A. § 1983 (West 1994). A "person" under § 1983 includes a municipality. *Monell v. Dep't of Social Svcs.,* 436 U.S. 658, 688–89, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Municipal entities, however, may not be held liable under

**3.** For purposes of deciding this motion, the Court need not determine whether the facts of Plaintiff's case actually meet the requirements of section 39407 at this time.

**4.** Alternatively, Defendants assert that Defendants Eppihimer and Pena are entitled to absolute legislative immunity from the due process claims. The Court rejects this argument for the same reasons it rejects the application of legislative immunity on Count II.

**5.** The differences between the original Complaint and the proposed Amended Complaint on Count II have not impacted on the consideration of Defendants' Motion for Judgment. Therefore, the Court will refer to the proposed Amended Count.

section 1983 for injuries inflicted solely by its employees or agents on a respondeat superior theory of liability. *Id.* at 691, 98 S.Ct. 2018.

■ Municipalities may be held liable for violations of constitutional rights under § 1983 in only two circumstances. One situation is when the alleged unconstitutional action implements a municipal policy or practice, or a decision that is officially adopted or promulgated by those whose acts may fairly be said to represent official policy. *Reitz v. County of Bucks,* 125 F.3d 139, 144 (3d Cir.1997) (citing *Monell,* 436 U.S. at 690–91, 98 S.Ct. 2018 (1978)). Alternatively, a municipality may be held liable if it fails to properly train its employees, such that the failure amounts to deliberate indifference to the rights of persons with whom its employees come into contact. *Id.* at 145 (citing *City of Canton v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)).

■ There are at least three ways to establish the existence of policy or custom. First, a municipal employee can be found to have acted pursuant to a formal government policy or by a standard operating procedure long accepted within the government entity. *Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989). Second, liability attaches to the local government where the accused individual has policymaking authority rendering his/her behavior an act of official government policy. *Pembaur v. City of Cincinnati,* 475 U.S. 469, 480–81, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). An official with policymaking authority can also ratify the unconstitutional actions of a subordinate, rendering the behavior official for liability purposes. *City of St. Louis v. Praprotnik,* 485 U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988) (plurality opinion).

■ Defendants contend that Plaintiffs have failed to allege wrongdoing that states a cognizable Monell claim. The Court disagrees. Ordinarily, a single incident by a lower level employee acting under the color of law does not establish either an official policy or custom. *See City of Oklahoma v. Tuttle,* 471 U.S. 808, 832, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). However, reviewing the pleadings in the light most favorable to the Plaintiff, the Court agrees that the proposed Amended Complaint pleads allegations going beyond those of an isolated decision to terminate his job. Plaintiff alleges that Eppihimer and Pena developed a "hit list" of city employees whom they regarded as political enemies, with the intent to terminate those employees in retaliation for their support of comprehensive trash collection. Am. Compl. ¶ 50. These allegations assert that the Mayor established a custom or policy of eliminating political opponents, and that Mr. Katzenmoyer's termination was as a result of this custom or policy. The breadth of the allegations render the claim actionable. *See Bartholomew v. Fischl,* 782 F.2d 1148, 1153 (3d Cir.1986) ("We do not agree [with the district court] that a course of retaliatory conduct including the issuance of public defamatory charges and the elimination of an employee's position may as a matter of law be characterized as 'a single instance of illegality.' ").

■ Furthermore, Eppihimer is clearly an official whose actions can impose liability on a municipality, because he is an official "whose edicts or acts may fairly be said to represent official policy." *Monell,* 436 U.S. at 694, 98 S.Ct. 2018. Whether an individual has final policy-making authority for a municipality is a question of state and/or local law or custom. *Jett,* 491 U.S. at 737, 109 S.Ct. 2702. Here, the Mayor is a municipal employee with the

authority to make policy. *See Bartholomew*, 782 F.2d at 1153.

The Court denies Defendant City of Reading's Motion for Judgment on Count II. Plaintiff is granted leave to amend the count as stated against the City in the form contained in the proposed Amended Complaint.

## 2. Absolute Legislative Immunity

■ Defendants Eppihimer and Pena assert that they are entitled to absolute legislative immunity. Defendants contend that their actions are entitled to legislative immunity because through their actions they were simply carrying out a City Council ordinance that eliminated various positions, including the position held by defendant. The Court disagrees with this characterization of the allegations, and therefore rejects the application of legislative immunity in this instance.

■ Local legislators are absolutely immune from liability for their legislative activities. *Bogan v. Scott–Harris*, 523 U.S. 44, 49, 118 S.Ct. 966, 140 L.Ed.2d 79 (1998). This immunity may also extend to non-legislative officials acting in a legislative capacity. *Aitchison v. Raffiani*, 708 F.2d 96, 99–100 (3d Cir.1983) (extending legislative immunity to mayor who voted to pass ordinance and borough attorney who advised council in drafting ordinance). In order to qualify as legislative, the act in question must be both substantively and procedurally legislative in nature. *In re Montgomery Cty.*, 215 F.3d 367, 376 (3d Cir.2000). An act is substantively legislative where it involves "policy-making of a general purpose" or "line-drawing." *Id.* quoting *Carver v. Foerster*, 102 F.3d 96, 100 (3d Cir.1996). An act is procedurally

legislative if it is undertaken "by means of established legislative procedures." *Id.*

Plaintiff has not alleged any legislative actions.[6] Defendants' position is only plausible if one ignores the allegations actually pled by Plaintiff. Plaintiff alleges that Eppihimer and Pena first developed a "hit list" of city employees whom they intended to terminate, on or about January 3, 2000. Am.Compl. ¶ 50(a). Plaintiff then alleges that on April 28, 2000, Pena, acting at the direction of Eppihimer, terminated Plaintiff. Am.Compl. ¶ 52(b). The pleadings lack any allegations of procedurally legislative actions taken against Katzenmoyer. Furthermore, as actually stated in the pleadings, the specific action alleged against Eppihimer reflected a personnel decision rather than general legislative policymaking. *See In re Montgomery Cty.*, 215 F.3d at 376–77; *Ballas v. City of Reading*, Civil Action, No. 00–CV–2943, 2001 WL 359817 (E.D.Pa. April 3, 2001) ("[E]mployment actions taken with respect to specific employees do not constitute substantively legislative conduct."). Neither would the actions of Eppihimer and Pena be rendered legislative by virtue of a subsequent legislative act by the City Council eliminating Plaintiff's position. *See Carver v. Foerster*, 102 F.3d 96, 101 (3d Cir.1996) ("An unconstitutional or illegal course of conduct by county government does not fall within the doctrine of absolute immunity merely because it is connected to or followed by a vote of a county board.").

The Court therefore denies Defendants' Eppihimer and Pena's Motion for Judgment on Count II, and grants Plaintiff leave to amend Count II as to those defendants in the form of the proposed amendment.

---

**6.** In fact, neither Plaintiffs' Complaint nor Plaintiffs' proposed Amended Complaint makes any mention of the City Ordinances relied upon by Defendants.

## C. Counts IV, V, VI: State Claims

Plaintiff Michael Katzenmoyer next brings three state and local law claims. Count IV brings a wrongful termination claim pursuant to the City Charter against all three Defendants. Count V brings a "wrongful termination public policy" claim under state law. Count VI brings a retaliatory discharge claim under state law. Defendants first contend that claims are barred against Eppihimer and Pena by virtue of the absolute privilege for high officials. Defendants next contend that the claims are barred against all defendants by virtue of official immunity provided under Pennsylvania's Political Subdivision Tort Claims Act, 42 Pa.Cons.Stat. § 8541, et seq. Finally, Defendants claim that any retaliation or wrongful termination claims under common law are barred because they are preempted by Pennsylvania's Whistleblower Act, 43 Pa. Cons.Stat. §§ 1421, et seq. The Court will consider each of these claims in turn.[7]

### 1. High Public Official Immunity

■ Defendants Eppihimer and Pena contend that they are both absolutely privileged against liability on the state and local claims. The Court has previously considered the application of high public official immunity with these same defendants in the context of a related case, *Ballas v. City of Reading.* There, in considering liability on state and local wrongful and retaliatory termination claims, the Court determined that Eppihimer was entitled to official immunity on such claims, *Ballas v. City of Reading,* Civil Action No. 00–CV–2943, 2001 WL 73737 (E.D.Pa. Jan. 25, 2001), but Pena was not. *Ballas,* 2001 U.S.Dist. LEXIS 4253, at *9–12. The claims asserted here are similarly claims of

retaliation and wrongful termination under state and local law. Am.Compl. ¶¶ 80–98. Therefore the same conclusions apply here, and so Eppihimer is entitled to official immunity and Pena is not entitled to official immunity. The Court therefore grants Defendant Eppihimer's Motion for Judgment on Counts IV, V, and VI. The Court denies the Motion for Judgment on Counts IV, V, and VI with respect to Defendant Pena.

### 2. The Tort Claims Act

■ All three Defendants next contend that Counts IV, V, and VI are barred by the Pennsylvania Political Subdivision Tort Claims Act ("Tort Claims Act"), 42 Pa. Cons.Stat.Ann. § 8541. The Tort Claims Act exempts local agencies from liability for damages for any injuries caused by acts of the agency or its employees. 42 Pa.Cons.Stat.Ann. § 8541 (West 2000). Injured parties may recover in tort from a municipality only if (1) damages would be otherwise recoverable under common law or statute; (2) the injury was caused by the negligent act of the local agency or an employee acting within the scope of his official duties; and (3) the negligent act of the local agency falls within one of eight enumerated categories. 42 Pa.Cons.Stat. Ann. § 8542 (West 2001); *Swartz v. Hilltown Township Volunteer Fire Co.,* 721 A.2d 819, 820–21 (Pa.Cmwlth.1998). The eight exceptions to the legislative grant of immunity are: (1) vehicle liability; (2) care, custody, or control of personal property; (3) care, custody, or control of real property; (4) trees, traffic controls, and street lighting; (5) utility service facilities; (6) streets; (7) sidewalks; and (8) care, custody, or control of animals. 42 Pa. Cons.Stat. § 8542(b) (2000). Because the

---

7. The counts as contained in the original Complaint and the proposed Amended Complaint are identical, except with respect to the

numbering of paragraphs and reference to prior paragraphs incorporated.

claims asserted in Counts IV, V, and VI involve intentional torts, the Court concludes that the Tort Claims Act bars these claims against the City. *Ballas,* 2001 U.S.Dist. LEXIS 657, at *31–32. The Court therefore grants judgment on Counts IV, V, and VI with respect to the City of Reading. Plaintiff is denied leave to amend these Counts with respect to the City of Reading.

 The Tort Claims Act further extends immunity from liability to officials acting within the scope of their duties to the same extent as the local agency, except for acts constituting a crime, actual fraud, actual malice or willful misconduct. 42 Pa.Cons.Stat.Ann. §§ 8545, 8550 (West 2000). Read generously, the claims here involve willful misconduct by Eppihimer and Pena. Am.Compl. ¶¶ 28, 49, 50, 65. Thus, the Torts Claims Act does not operate to bar the suits against the individuals. *Ballas,* 2001 U.S.Dist. LEXIS 657, *32–33. The Court denies Defendant Pena's Motion for Judgment on Counts IV, V, and VI.

### 3. Preemption of Common Law Remedies

 Finally, Defendants contend that any common law claims here are barred, because there is a statutory remedy (the Whistleblower Act) which encompasses Plaintiff's claims. Under Pennsylvania law, there is an action for wrongful discharge only where there is no available statutory remedy for the aggrieved employee. *See Novosel v. Nationwide Ins. Co.,* 721 F.2d 894, 899 (3d Cir.1983); *Hicks v. Arthur,* 843 F.Supp. 949, 957 (E.D.Pa. 1994); *Jacques v. Akzo Int'l Salt Inc.,* 422 Pa.Super. 419, 619 A.2d 748, 753 (1993). Courts have specifically applied this rule to bar common law claims where a plaintiff had cognizable claims under the Whistleblower Act. *See Freeman v. McKellar,* 795

F.Supp. 733, 742 (E.D.Pa.1992) ("On the facts alleged, plaintiff has an appropriate statutory remedy under the Whistleblower Act.... Accordingly, the court will dismiss Counts III and IV.")

Pennsylvania's Whistleblower Act, 43 Pa.Cons.Stat.Ann § 1421, et seq., prohibits an employer from discharging, threatening, or otherwise discriminating or retaliating against an employee because the employee "makes a good faith report or is about to report ... to the employer or appropriate authority an instance of wrongdoing or waste" or if the employee "is requested by an appropriate authority to participate in an investigation, hearing or inquiry ..." 43 Pa.Cons.Stat.Ann. § 1423(a)–(b).

Defendants claim that Katzenmoyer's claims fall under the Act because the Plaintiff alleges he reported wrongdoing by Eppihimer. Specifically, Plaintiff alleges that, "Mr. Katzenmoyer expressed his view that Mr. Eppihimer violated the City of Reading City Charter and its ethics provisions, by reporting in 1998 to Mr. Katzenmoyer's department head Mr. Mucha that defendant Eppihimer had committed an ethics violation." Am.Compl. ¶ 95. To the extent that any common law retaliation or wrongful termination claims are based on this specific allegation, the claim might fall under the Whistleblower Act, assuming the allegation supports the conclusion that the incident involved a "good faith report" to an "employer or appropriate authority" regarding wrongdoing by Eppihimer. *See* 43 Pa.Cons.Stat.Ann. ¶ 1423(a). Therefore, any common law claims would be preempted.

However, a fair reading of Plaintiff's wrongful termination and retaliation claims in Counts IV, V, and VI show that his claims are principally based upon First Amendment and similar claims, including the voicing of his political views and his

support of political positions adversarial to those held by Eppihimer. Am.Compl. ¶¶ 88, 93, 94; see also Am.Compl. ¶ 68. These alleged acts of wrongdoing are completely independent and unrelated to the allegations regarding Katzenmoyer's reporting of ethics violations by Eppihimer. The Court concludes that these actions do not fall under the Whistleblower Act, and that the common law claims based on these acts are not preempted by the existence of a statutory remedy. Therefore, the Court denies Defendants motion for judgment on Counts IV, V, and VI on this basis.

### E. Counts VII and VIII—Claims by Charlotte Katzenmoyer

In the original complaint, Count VII stated a claim for loss of consortium and Count VIII stated a claim for injunctive relief. In her proposed Amended Complaint, however, Plaintiff appears to have converted Count VII to a § 1983—due process claim, and also amended the relief sought in Count VIII.[8] Because of the change in nature of the claims in these counts, Defendants did not address the claims as contained in the proposed amendment in their motion for judgment on the pleadings. The Court therefore grants Plaintiffs leave to file the amended Counts VII and VIII.[9]

## IV. CONCLUSION

For the reasons stated, the Court denies Defendants' Motion for Judgment except with respect to Counts IV, V, and VI against the City of Reading and Eppihimer. For all the remaining counts, Plaintiffs are granted leave to amend their Complaint. An appropriate Order follows.

---

8. The language of the Count leaves it unclear as to whether Plaintiff has abandoned a cause of action for loss of consortium.

## ORDER

**AND NOW,** this 21st day of May, 2001, upon consideration of Defendants' Motion for Judgment on the Pleadings (Doc. No. 4), Plaintiffs' Motion to Amend the Complaint (Doc. No. 7), and all supporting and responsive briefing, **IT IS HEREBY ORDERED** that said Motions are **GRANTED** in part and **DENIED** in part. In furtherance thereof, it is specifically ordered that:

1. Counts I and III of the Complaint are **DISMISSED.** Plaintiffs are granted leave to amend Counts I and III.

2. Defendants' Motion for Judgment on Count II is **DENIED.** Plaintiffs are granted leave to amend Count II.

3. Judgment is **GRANTED** in favor of Defendants City of Reading and Joseph Eppihimer on Counts IV, V, and VI. Plaintiffs are **DENIED** leave to amend these counts with respect to these defendants.

4. Defendant Jesus Pena's Motion for Judgment on Counts IV, V, and VI is **DENIED.** Counts IV, V, and VI may go forward as to Defendant Pena only.

5. Plaintiffs are **GRANTED** leave to amend Counts VII and VIII of the Complaint.

6. Plaintiff shall file with the Clerk of the Court an Amended Complaint consistent with the accompanying Memorandum, on or before June 11, 2001.

---

9. The amendment is allowed without prejudice to Defendants' ability to file a subsequent motion alleging any defects in the new counts.