Petrillo, Appellant, *v.* City of Farrell et al.

Argued September 28, 1942. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Benjamin H. Marks,* for appellant.

*Emrys G. Francis,* with him *Joseph H. Broscoe,* for appellee.

OPINION BY MR. JUSTICE PARKER, November 23, 1942:

The appellant, Nicholas Petrillo, contends that he was demoted on January 15, 1942, from rank of captain to that of patrolman on the police force of the city of Farrell, a city of the third class, in violation of the terms of the civil service law applicable to cities of that class. Prior to that time the city's police force had consisted of thirteen policemen of whom one was chief, two were captains and the remainder were patrolmen. Petrillo had been a member of the force for thirteen years and during the last six years had been a captain. I. E. Frankel had also been a captain for four years. On that date the city by ordinance fixed the number of police officers at thirteen, as it had been, and provided that from that number the council and mayor should appoint a chief and a captain to serve for a period of two years or until their successors were appointed and qualified, the chief to receive a salary of $181.50 per month, the captain $165, and the others $155. On the same day by resolution of council all thirteen were retained as police officers, Frankel was named captain and Petrillo was demoted to patrolman. No hearing was given Petrillo.

Thereupon Petrillo presented to a court of common pleas a petition for writ of alternative mandamus to council to restore him to the captaincy. On service of the

writ the city presented a petition to quash the writ and after argument it was quashed. We agree with the conclusion reached by that court.

The appellant in his petition averred that the ordinance referred to was "merely subterfuge to evade the provisions of the Civil Service Act and were [was] purely political and not ordained for the purpose of economy." He then avers that he could not be demoted without a hearing and cites in support of his contention the cases of *Simmler v. Phila.*, 329 Pa. 197, 198 A. 1, and *Carey v. Altoona*, 339 Pa. 541, 16 A.2d 1. In this connection he contends that words used in the article in the statute dealing with civil service in cities of the third class should receive the same construction as those used in a corresponding article in the law applying to cities of the first class.

If the ordinance of 1942 had done away entirely with the office of captain it would have been of no avail to Petrillo to have averred that the ordinance was passed for political purposes. "The reasons prompting the removal of an employee may be judicially investigated in order to ascertain whether they are such as are made illegal by statutory provisions, but where the office itself is abolished by legislative act or ordinance a court will not pry into the motives of the legislators who voted for its passage": *Carey v. Altoona*, supra, p. 543. Our inquiry therefore is whether there is any provision in the statute preventing the demotion of Petrillo without a hearing. In this respect appellant argues that his rights were senior to those of Frankel and in effect that Frankel and not he should have been demoted.

We are of the opinion that the council of a city of the third class may choose from the legally appointed members of the police force of such city a chief and captains without further examination by the civil service board and that such appointing power may demote such appointee to a lower rank without a hearing provided such person so demoted is continued as a member of the

police force. The civil service status which Petrillo acquired was merely that of a member of the police force and not that of a captain.

The status and resulting rights of Petrillo are fixed by Article XLIV (53 PS 12198-4401 et seq.) of the Third Class City Law, Act of June 23, 1931, P. L. 932. This statute follows the general plan of civil service legislation in requiring examinations and investigation by an independent board as a prerequisite for appointment to certain positions as a means of obtaining the best qualified servants and the most efficient service from available candidates, and in assuring persons so qualified and chosen permanency in their employment so far as consistent with public welfare. These reciprocal provisions are of the essence of civil service statutes and must be maintained if they are to serve their purpose.

Section 4401 (53 PS 12198-4401) provides that "no person or persons may be appointed to any position whatever in the police department . . . without having first passed all examinations hereinafter provided for." It is conceded that Petrillo took all examinations required for police officer when he became a member of the force many years ago, but it is not averred that he took any examination for the position of captain. On the oral argument in the court below it was admitted that he did not take such second examination. The city contends, and we agree with that contention, that the act did not require any such second examination as a condition to appointing Petrillo as a captain. If it was required Petrillo did not comply with the law and he would not be protected by it: *McCartney v. Johnston,* 326 Pa. 442, 446, 191 A. 121; *Detoro v. Pittston,* 344 Pa. 254, 260, 25 A.2d 299.

Sections 2001 and 2002 of another article of the same law provide for the appointment of a chief and captains from the police force. Section 2002 is as follows: "The council may designate, from the force, the chief and other officers who shall serve as such officers until their suc-

cessors are appointed and qualified." The general design of Article XLIV indicates that an appointee acquires the status which corresponds with the examination which he takes. Passing an examination for a police officer would not necessarily disclose qualifications for a building inspector or even for a chief or captain of police. Petrillo was appointed from the force and he still remains a member of the police force for which he qualified.

It will be assumed that the legislature might have provided that an officer advanced in rank from the force could not be demoted except for violations of law, rules of the department or like reasons. An examination of all the sections of Article XLIV fails to disclose any intention on the part of the legislature to require examination for promotion or demotion within a department. In fact the implications of the statute are to the contrary. Section 4406 contains this provision: "In all cases the [examining] boards may recommend those in the employ of a department for promotion in case the person recommended is competent for the higher position." Not only does this imply that an examination is not necessary but it is in strong contrast with other mandatory provisions of the same section which make an examination a prerequisite to employment. In short, council retains the powers given it by sections 2001 and 2002 to promote and demote within the police department.

We now turn to the sections of the article dealing with tenure of office and procedure for dismissal. Section 4407 contains this sentence: "All appointments *made subject to the provisions of this article* shall be for and during good behavior, and no employee shall be removed or transferred for any political reasons whatever." [Italics supplied.] The legislature was careful to protect those only who were subject to the provisions of that article and even then only against removal or transfer. Not a word was said about demotions or reductions in pay or rank although such restrictions have frequently been placed in other statutes dealing with civil

service. Petrillo was not removed or transferred from any position that he acquired by virtue of the civil service law, but was demoted by order of council, the appointing power.

When we examine section 4408 we find further support for our conclusions. This is the only section which specifically gives an appointee a right to a hearing before his employment or position is adversely affected. It prescribes in substance that an employee after hearing and charges made and sustained may be "discharged". There is again no reference to "reduction" or "demotion". At the end of the section we find this provision: "Provided, however, That if it should become necessary to reduce the number of men in said department for purposes of economy, seniority rights shall prevail, and any and all removals for such cause or causes shall be from the members last appointed, and the member or members serving the shortest time shall be removed first; but members with longer times of service may be discharged for cause." The proviso is not effective unless it becomes necessary in the interest of economy to reduce the *number of men in said department* and then only seniority rights shall prevail. It is significant that it is only in the event that the number of men in the department is reduced that seniority rights are given the members of the force. We fail to find any declaration by the legislature interfering with the promotion or demotion of officers within a department. Petrillo was not charged with any dereliction of duty and there was no occasion for a hearing.

But the appellant argues that our present conclusion is inconsistent with our previous decision in *Simmler v. Phila.*, supra. We do not think so. We there found an ambiguity in the language used in Article XIX (53 PS 3321 et seq.) of the First Class City (Philadelphia Charter) Act of June 25, 1919, P. L. 581, that called for judicial construction. We held that in view of that ambiguity and the context the provision in that act requiring a hearing in a case of a removal included the right to a

hearing in case of demotion. When we compare the two acts we find that the terms employed as well as the plans are radically different and that almost every item which moved us to make the construction that we did in the Simmler case is absent in the Third Class City Act. The civil service provisions of the Philadelphia Charter are much more elaborate and are intended to deal with very much larger bodies than are found in third class cities. This is peculiarly so in the case of the officers of the police force.

By section 1 of Article XIX of the Philadelphia Charter "all appointments, transfers, reinstatements, promotions, reductions, suspensions, removals, and dismissals, in the civil service of such city, shall be made in accordance with the terms of this [that] article and the rules prescribed thereunder." In contrast with the corresponding section in the Third Class City Act, the 16th section of Article XIX of the Philadelphia Charter provides that "no person in the classified service . . . shall be appointed, promoted, suspended, reduced, or removed, or in any way favored, or discriminated against, because of his political or religious opinions or affiliations." In like contrast the 17th section (53 PS 3337) requires the commission to classify and grade all persons in the classified service, to place all those having duties of the same general nature and in the same line of promotion in the same grade, and to definitely specify the lines of promotion.

In the Simmler case we were particularly required to construe section 18 (53 PS 3338) which provides that no police officer or fireman shall be removed or discharged without a hearing before the civil service commission. When the act was viewed as a whole it was apparent that promotions followed examinations and grading by the examining board and we naturally came to the conclusion that removal could be construed to include demotion.

The order of the court below is affirmed at the cost of the appellant.