**Roland v. Heverling, Jr.**

*George E. Christianson*, of *Lewis, Brubaker, Whitman & Christianson*, for plaintiffs.

*R. Hart Beaver*, City Solicitor, for defendants.

*C. Wilson Austin*, amicus curiae.

GATES, P. J., April 21, 1972.—Plaintiffs are three officers of the Police Department of the City of Lebanon, Pa. Defendants are all the members of Lebanon City Council.

After examining the pleadings and after a hearing, we are satisfied that an actual controversy exists between the parties as well as ripening seeds of future controversies are presented by reason of the legal relationships created and affected by statutes and municipal ordinances. Therefore, we have elected to exercise our discretion and grant relief by way of the declaratory judgment proceeding as described in the Uniform Declaratory Judgments Act of June 18, 1923, P. L. 840, sec. 1, et seq., as amended, 12 PS §831, et seq.

The controversy arises in the following manner. On December 13, 1971, the City Council of the City of Lebanon adopted ordinance no. 68 which, effective January 1, 1972, purports to comply with the Act of December 27, 1967, P. L. 893, sec. 1, 53 PS §37001, by fixing the number, grades and compensation of the members of the Lebanon city police force. Since no one challenges the validity of the ordinance and accepts it as accomplishing that purpose, we shall do the same. By that ordinance, the police force consists of 42 mem-

bers, including one chief, one lieutenant, three corporals, three sergeants, four detective sergeants, one detective, and 29 patrolmen.

Lebanon's new mayor took office on the first Monday of January, 1972. By his order of February 7, 1972, he appointed plaintiff, Clifford A. Roland, to the position of Lieutenant of the Lebanon City Police Department effective as of that date at an annual salary of $9,550. By an identically dated order, he appointed plaintiff, Clarence D. Keenan, to the position of Sergeant of the Lebanon City Police Department at an annual salary of $9,100. Furthermore, by an order he appointed Bernard P. Reilly, one of plaintiffs, to the position of corporal at an annual salary of $8,550.

Additionally, by letter dated February 7, 1972, the mayor demoted Lloyd E. Wolfe from the rank of lieutenant to the rank of sergeant. Lieutenant Wolfe was not appointed to the position of Lieutenant by way of civil service examination.

Except for the grade of lieutenant, it must be conceded that the new appointees filled existing vacancies in the police bureau.

For years prior to 1972, appointments and promotions in the Lebanon City Police Department were made by the entire city council and not ex parte by the mayor.

The remaining members of council took exception to the action of the mayor in making the ex parte promotional appointments and fixing the salaries therefor and to the demotion of Lieutenant Wolfe without the approval of council. Thereafter, upon advice of the city solicitor, council adopted a resolution freezing the salaries of the newly promoted plaintiffs and, by their answer to plaintiffs' petition for declaratory judgment, denied that the mayor of the City of Lebanon had the authority to demote Lieutenant

Wolfe without a hearing or the consent of entire city council and that his attempted promotion of plaintiffs is in direct contravention of the acts of the General Assembly of the Commonwealth of Pennsylvania, the ordinances of the City of Lebanon, and the personnel regulations adopted by the city.

The prayer of plaintiffs' petition asks us to declare that their appointments are legal and proper and that they are entitled to the additional compensation from the date of their appointment by the mayor.

About the only thing counsel agree upon is that the Third Class City Code and the commission form of government created thereby is most unsatisfactory. Analyzing and trying to understand the legislative intention in adopting many provisions of the Third Class City Code and the commission form of government is no sport for the short-winded. The combination of executive and legislative powers within one branch of government is offensive to the legacy of Montesquieu who originated the three power system of government.

We do not pretend to be pioneers in our criticism of the commission form of government. Repeated attempts have been made by the legislature to amend the Third Class City Code to permit a three power form of government. Unfortunately, these efforts have been unsuccessful. The most frequently expressed concern is that a city manager or strong mayor would overwhelm council and become a dictator. The argument is designed for shallow thinking. The division of governmental power into three categories has worked quite successfully for the government of the United States of America as well as this Commonwealth. Perhaps it is the system of checks and balances upon the exercise of governmental powers which has made the system work and has produced no dictators. None-

theless, this problem has developed into one of the major legislative issues facing each session of the General Assembly.

In 1955, as a concession to logic, the General Assembly passed legislation authorizing charter commissions in any third class city for the purpose of studying the existing structure of government, posing changes, and submitting the matter to the citizens for their adoption or rejection. Perhaps a new day is dawning; but, for the present, we must work with the tools at hand.

Initially, we must reject the city's contention that no vacancy exists in the office of lieutenant, because the demotion of Lieutenant Wolfe was illegal and, therefore, the appointment of Clifford A. Roland as lieutenant is unlawful.

Before Lieutenant Wolfe could question the propriety of his demotion, the burden would be upon him to establish that he was properly appointed under the civil service provisions of the Third Class City Code: Snizaski v. Zaleski, 410 Pa. 548. If his appointment as lieutenant was not in conformity with the Third Class City Code or its civil service provisions, then Lieutenant Wolfe would not be entitled to the civil service protection afforded by that law. Lieutenant Wolfe was not appointed to the position of lieutenant by way of civil service examination, and, therefore, he is precluded from any benefits he might otherwise have under the provisions of civil service. But, more importantly, Lieutenant Wolfe is not a party to this proceeding, and it is he and only he who would have standing to challenge his demotion. He might have remedies available to him under the civil service law, but he has chosen not to exercise those remedies and the time has now passed for him to do so. But those remedies are available to the civil servant, not to

defendants in this case. Thus, we conclude that there was a vacancy in the position of lieutenant at the time the mayor appointed Clifford A. Roland .

We must now address ourselves to the question of the right of the mayor, without the approval of the remaining members of council or without regard to civil service law, to appoint officers in the police department.

The Third Class City Law of 1931 provided that "The council may designate, from the force, the chief and other officers who shall serve as such officers until their successors are appointed and qualified." This provision was interpreted in a most enlightening way in Petrillo v. City of Farrell, 345 Pa. 518.

Petrillo had been demoted from the rank of captain to that of patrolman on the police force of the City of Farrell, a third class city. Petrillo argued that his demotion was in violation of the terms of the civil service law applicable to cities of that class. Petrillo presented to the court of common pleas a petition for writ of alternative mandamus to compel council to restore him to the position of captain. The lower court entered an order quashing the writ, and Petrillo appealed. The Supreme Court affirmed the lower court, holding that the council of a city of the third class may choose from the legally appointed members of the police force a chief and captains without further examination by the civil service board and that such appointing power may demote such appointee to a lower rank without a hearing provided such person so demoted continued as a member of the police force. Importantly, the court noted, at page 521: ". . . The civil service status which Petrillo acquired was merely that of a member of the police force and not that of a captain."

The Petrillo court examined the general plan of civil

service legislation as set forth in the Third Class City Law of June 23, 1931, P. L. 932. Section 4406 of the act was amended October 13, 1965, P. L. 579, sec. 1, 53 §39406, but it retained the identical pertinent language. It provides that: ". . . In all cases the boards may recommend those in the employ of a department for promotion in case the person recommended is competent for the higher position. . . ." The court noted that: ". . . Not only does this imply that an examination is not necessary but it is in strong contrast with other mandatory provisions of the same section which make an examination a prerequisite to employment. In short, council retains the powers given it by sections 2001 and 2002 to promote and demote within the police department."

As we can, therefore, see it was the settled law in this Commonwealth from 1931 until 1951 at least, that, under the Third Class City Code, council had the right to not only promote but demote officers within the police department without regard to the civil service law.

In 1951, the Third Class City Code was again amended. By section 2002 of the code, power to designate chiefs and other officers for the police force was transferred from council to the mayor, so that, since 1951, it is the mayor who designates, from the force, the chief and other officers who shall serve as such officers until their successors are appointed and qualified.

In Zeloyle v. Bettor, 371 Pa. 546, the court was faced with a situation where the mayor demoted the chief of police who had been appointed by council under its authority under the 1931 Third Class City Code. It was conceded that the mayor had the sole right to promote and demote officers in the police force with-

out regard to civil service under the 1951 amendment, but it was urged that the mayor was without power to demote an officer who had been designated by council in the exercise of its power under the prior 1931 law. The court rejected the argument. It was noted that since the power to demote formerly inhered in the council by virtue of its power to designate under the law of 1931, as in Petrillo, supra, by like token, the power to demote now inheres in the mayor by virtue of his power to designate under the code of 1951. The mayor's power to demote was held to necessarily extend to an officer who was designated by the council in the exercise of its former power under the prior law. All that was done by the amendment to the Third Class City Code of 1951 was the naming of a new repository of the power, the scope of which remains the same.

In Zeloyle, it was again reiterated that civil service rights attach only to policemen and not to an officer of the police appointed by the mayor.

Defendants here further contend that the rules of the civil service commission of the City of Lebanon and the personnel rules and regulations, Resolution No. 173 of council, have limited the power of the mayor to designate, promote or demote police force officers. However, Zeloyle, supra, specifically holds that neither regulations promulgated by the city's civil service board nor ordinances adopted by council could in any way deprive the mayor of his statutory right to designate the chief and other officers of the police force. The rationale is elementary. It has long been the law that municipal ordinances are invalid insofar as they conflict with acts of the legislature or insofar as they can fairly be regarded as having been supplanted by statute: Kline v. Harrisburg, 362 Pa. 438; Bussone v. Blatchford, 164 Pa. Superior Ct. 545 (1949). Certainly,

if conflicting ordinances are invalid, a fortiori, councilmatic resolutions and rules of the civil service commission are equally ineffective.

The Third Class City Code was again amended on December 27, 1967, P. L. 893, sec. 2, 53 PS §37002. However, the statutory language pertinent to this proceeding remains the same. Under the 1967 Act, "The mayor shall designate, from the force, the chief and other officers who shall serve as such officers until their successors are appointed and qualified . . ." The 1967 amendment merely added that ". . . The chief of police shall be designated by the mayor and may be demoted without cause in the same manner, but not to any rank lower than the rank which he held at the time of his designation as chief of police." This additional language is irrelevant to this proceeding.

It should be noted that by section 2001 of the 1967 amendment, 53 PS §37001, the legislature added the following language: ". . . and no member of the city police force having been promoted in conformity with the civil service provisions of this act shall be demoted in rank or discharged from the police force except upon proper cause shown as set forth under the civil service provisions of this act . . ." The 1967 amendment to the section authorizing council to fix, by ordinance, the number, grade and compensation of the police in no way conflicts with, or affects, the mayor's power to promote officers from within the force. The additional language is, however, a limitation upon his power of demotion. Yet, as we have seen before, the officer demoted by the mayor had not been promoted in accordance with the civil service provisions of the law and, furthermore, defendants in the case have no standing to complain of that demotion even if unauthorized.

While we are satisfied that the mayor has acted within his statutory authority in making the promotions and demotion in controversy, it is readily apparent that the misuse of power within the framework of the commission form of government as detailed in the Third Class City Code could lead to chaos and bring city government to a grinding halt. As lamentable as this may be, the court is without power to legislate, and the remedy lies either with the legislature or with the electorate under the new optional Third Class City Charter Law.

Finally, we are of the opinion that Resolution No. 15 of the Council of the City of Lebanon sitting in sessions 1972-1973 is invalid, insofar as it attempts to defeat the right of the mayor to appoint Clifford A. Roland as a lieutenant at a salary of $9,550; as it attempts to invalidate the appointment of Clarence H. Keenan as sergeant at a salary of $9,100; and as it attempts to nullify the appointment of Bernard P. Reilly as corporal at a salary of $8,550. Therefore, we will grant the prayer of plaintiffs' petition for declaratory judgment.

## ORDER

And now, to wit, April 21, 1972, it is the judgment of this court and it therefore declares that, effective February 7, 1972, Clifford A. Roland is entitled to the rank of lieutenant of the Lebanon City Police Department at an annual salary of $9,550; that Clarence D. Keenan is entitled to the rank of sergeant of the Lebanon City Police Department at an annual salary of $9,100, effective February 7, 1972; and Bernard P. Reilly is entitled to the rank of corporal at an annual salary of $8,550, effective February 7, 1972, and judgment thereupon our declaration is hereby entered.