**Thomas F. BENNIS and Roger J. MacLean**

v.

**Carson GABLE, Joseph Daddona and City of Allentown.**

Civ. A. No. 82–1277.

United States District Court, E.D. Pennsylvania.

Dec. 10, 1984.

James T. Huber, Allentown, Pa., for plaintiffs.

Robert G. Hanna, Jr., Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

On January 16, 1982, plaintiffs Thomas F. Bennis and Roger J. MacLean, two Allentown policemen, were demoted without a hearing by Mayor Joseph S. Daddona from the rank of detective to patrolman. This lawsuit was filed under 42 U.S.C. § 1983 and § 1985. Plaintiffs allege that the demotions violated their rights under the first amendment because they were politically motivated. Plaintiffs also assert that the demotions violated the fourteenth amendment because the demotions were made without cause, they were not given the opportunity of a hearing, and because the reduction in rank and salary constituted a taking of property. Plaintiffs' final allegation is that the demotions violated state law.

Defendants Joseph Daddona, the newly elected mayor of Allentown; Carson Gable, the newly appointed Chief of Police; and the City of Allentown have filed a motion to dismiss and a motion for summary judgment. Under Fed.R.Civ.P. 12(b)(6), I will treat this as a motion for summary judgment.

Federal Rule of Civil Procedure 56(c) states that summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. To prevail on a motion for summary judgment, the moving party must establish the absence of a genuine issue of material fact; "for these purposes the material it lodged must be viewed in the light most favorable to the opposing party . . ." *Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 159–60, 90 S.Ct. 1598, 1609–10, 26 L.Ed.2d 142 (1970). Therefore, all reasonable doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Joe Regueira, Inc. v. American Distilling Co.*, 642 F.2d 826 (5th Cir.1981). For the reasons which follow, the motion for summary judgment will be denied in part and granted in part. I find that a genuine issue of material fact does exist

with regard to the first amendment claim. I will, however, dismiss the fourteenth amendment claim and the other claims as a matter of law.

### THE FACTS

Plaintiffs Thomas F. Bennis and Roger J. MacLean both became Allentown police officers in April of 1974 after placing near the top of a group of candidates taking the Civil Service test. Bennis was promoted to the rank of detective in July of 1979, and MacLean received his promotion to detective in December of 1981.

On or about January 14, 1982, the plaintiffs were demoted to patrolman, shortly after the election of Mayor Daddona and only nine days after the appointment of Carson Gable as Chief of Police. Mayor Daddona himself decided to demote plaintiffs. Daddona had been mayor of Allentown from 1973 to 1977, when he lost a bid for re-election. The plaintiffs had supported Daddona originally, but after a falling-out in the mid-70's, they switched their allegiance to Daddona's opposition in both the Democratic primaries and in the general election. The plaintiffs openly campaigned for Daddona's political opponent in the 1981 general election which Daddona won.

After Daddona was elected, he immediately appointed Carson Gable as Chief of Police. Mr. Gable had served in this position from 1970 until 1977 when he retired at the same time Daddona left office. During his 1981 campaign, Daddona had expressed concern over poor morale and inefficiency in the police department. He felt that a "clique" of officers was undermining pride in the department. MacLean and Bennis were said to be part of this clique. After the election, Gable recommended that several officers be demoted and that several others be promoted as part of the solution to this problem. Daddona approved

four of the demotions, two of whom are plaintiffs in this action.[1]

The defendants have based their motion for summary judgment on several grounds. These include: (1) that the plaintiffs have not alleged a liberty or property interest sufficient to trigger the due process protections of the fourteenth amendment; (2) that the plaintiffs have failed to allege a cause of action under the first amendment; (3) that the plaintiffs have failed to allege sufficient grounds for their attack on defendant Gable's appointment as Chief of Police, and, in addition, lack of standing to assert such a claim; (4) that defendant Daddona acted in good faith relative to the instant demotions and that such good faith requires dismissal of the claim; and (5) that the plaintiffs should have exhausted administrative remedies prior to filing a civil rights action. Each charge will be addressed in turn.

### THE DUE PROCESS CLAIM

Plaintiffs assert that the demotions constituted a taking of property in violation of the fourteenth amendment. The fourteenth amendment prohibits state deprivations of life, liberty, or property without due process of law. In order to invoke the protections of the fourteenth amendment, it must first be decided whether the asserted individual interests are encompassed within "life, liberty or pursuit of happiness." *Robb v. City of Philadelphia*, 733 F.2d 286, 292 (3d Cir.1984). Property interests are not created by the Constitution *per se*, but rather "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). The sufficiency of the claim of entitlement must therefore be decided by reference to state law. *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976).

---

1. A similar lawsuit was filed by the other two officers demoted by Mayor Daddona. The suit, *Sames v. Gable*, 542 F.Supp. 51 (E.D.Pa.1982), *cert. denied,* — U.S. —, 104 S.Ct. 241, 78 L.Ed.2d 231 (1983) was dismissed by Judge Troutman. The Third Circuit reversed and remanded, and a subsequent request for a rehearing was denied. No decision has been made on the merits of that case.

It is undisputed that the City of Allentown has, since 1967, operated under the Optional Third Class City Charter Law. 53 Pa.Cons.Stat.Ann. § 41101 *et seq.* (Purdons Supp.1984). Prior to this time, the City operated under the Third Class City Code. (Pa.Cons.Stat.Ann. § 35101 *et seq.* (Purdons Supp.1984). The Optional Third Class City Charter provides for a Mayor-Council form of government, and places executive power in the hands of the mayor. The Third Class City Code and the Charter are meant to coexist and supplement each other, with the Charter superseding the Code only in so far as they are inconsistent. 53 Pa.Cons.Stat.Ann. § 41411 (Purdons Supp. 1984). Because the Optional Third Class City Charter is silent as to promotions and demotions of police officers, the Third Class City Code provisions pertaining to such matters govern such issues.

The defendants base their argument that no property right exists under state law in the rank of detective on the Third Class City Code, 53 Pa.Cons.Stat.Ann. § 37002 (Purdons Supp.1984) which reads:

> The mayor shall designate, from the force, the chief and other officers who shall serve as such officers until their successors are appointed and qualified. The chief of police shall be designated by the mayor and may be demoted without cause in the same manner, but not to any rank lower than the rank which he held at the time of his designation as chief of police.

This statute has been interpreted as conferring upon the Mayor the right to promote and demote. *Petrillo v. City of Farrell*, 345 Pa. 518, 29 A.2d 84 (1942). In *Petrillo*, a police captain was demoted to the rank of patrolman without a hearing. In interpreting the Third Class City Code, the court held that the appointing authority had the power to demote police chiefs and officers to a lower rank provided that the person so demoted was kept on as a member of the force.[2] In reaching this conclusion, the court recognized that the Civil Service provisions of the Third Class City Code gave the plaintiff a protected status as a patrolman, but created no right in any rank above that position. This protected status was conferred by 53 Pa.Cons.Stat. Ann. § 37001 which provides that "no member of the city police force having been promoted in conformity with the civil service provisions of this act shall be demoted in rank ... except upon proper cause shown as set forth under the civil service provisions of this Act." Since Petrillo took a civil service examination only to acquire his position as a patrolman, and no other civil service provision governed appointment to higher ranks, he could be demoted without a hearing as long as he retained his status as a patrolman.

The *Petrillo* decision was followed by *Sweeny v. Johns*, 33 Pa.Commn. 209, 380 A.2d 504 (1977).[3] The plaintiff was a patrolman who was reduced in rank for purely discretionary reasons. The court interpreted the statute as extending to the mayor the sole power to designate the chief of police and other officers, and to demote the chief and other officers without cause, and without a hearing or other civil service protection.

Plaintiffs argue that 53 Pa.Cons.Stat. Ann. § 37002 by its terms gives the mayor the right to demote only the chief of police. Because the statute is silent as to the mayor's power to demote other officers, the plaintiffs argue that police officers cannot be dismissed without cause. This argument is not persuasive in light of the case law and a reading of the statute itself. If the mayor can demote the *chief* of police without cause, it clearly follows that he can demote other police officers of lower rank without cause so long as their protected status as patrolmen under the civil service provisions is respected.

---

2. *Petrillo* was decided under Section 2002 of the Code, Act of June 23, 1931, which was amended in 1976 and became § 37002. The earlier statute simply gave the appointing power the right to promote and was silent as to demotions.

3. *Sweeny* was decided after the 1976 amendments to the Third Class City Code, *see supra*, note 2.

■ Under the appropriate statutory provisions, therefore, plaintiffs do not have a property right in the rank of detective, but only in that of patrolman. Thus they have no due process property interest in the rank of detective, and no right to a hearing. The demotions were therefore permissible.

■ Next plaintiffs argue that they had an entitlement to the rank of detective because it was a benefit conferred by a state agency and that due process protections were therefore necessary before demotion from that rank. A person's interest in a public benefit is a property interest for due process purposes if there are rules or mutually explicit understandings that support his claim of entitlement to the benefit and give him the right to invoke a hearing. *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Plaintiffs allege that the entitlement was created in one of two ways: either through the existence of a "Just Cause" provision applicable to the employment relationship; or through an implied procedure governing promotions and demotions that existed in the Allentown Police Department, which conferred an entitlement to rank. They further assert that the attack upon their reputation and integrity entitles them to the protections of the due process clause. I will address these assertions seriatim.

The plaintiffs first assert that a property right protectable under the due process clause exists when an employee's position is protected by a "Just Cause" provision in his or her employment relationship. They rely on 53 Pa.Cons.Stat.Ann. § 37001, which provides that no member of the city police force who is promoted in conformity with the civil service provisions of the Act can be demoted except upon proper cause shown as set forth under the Civil Service

Act. In *Abraham v. Pekarski*, 537 F.Supp. 858 (E.D.Pa.1982), Judge Becker concluded that an employee who cannot be dismissed except upon a showing of just cause has a property right based upon Local Agency Law, 2 Pa.Cons.Stat.Ann. §§ 501–508 (Purdons Supp.1984). Plaintiffs argue that this decision taken in conjunction with § 37001 creates a sufficient entitlement in the rank of detective so as to afford them due process protection.

■ This argument is without merit. Promotions to the rank of detective are not made in conformance with the civil service provisions of the Third Class City Code. Since promotions are not made through civil service procedures, demotions do not have to be made in conformance with the Civil Service Act. *Abraham* does not control as the court in that case was construing a Township Ordinance which contained a "just cause" provision governing all township employees. In the present case, there is no such explicit ordinance and the Third Class City Code allows the mayor to demote the chief of police and other officers without cause. *Petrillo*. Furthermore, the local agency law, upon which the property right in *Abraham* rested, is superseded by the Third Class City Code in matters concerning personnel and administrative policies. *Greenberg v. Bradford*, 432 Pa. 611, 614, 248 A.2d 51 (1968).[4]

■ Plaintiffs also assert that an implied procedure governing promotions and demotions in the Allentown Police Department existed at the time of their dismissal, conferring upon them an entitlement to their rank as detective. They cite *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), for the proposition that a procedure which has been followed over a period of time may have "created … a system in practice." 408 U.S. at 602, 92

---

**4.** In *Greenberg*, the Pennsylvania Supreme Court recognized that local laws must give way to "powers granted by the acts of the General Assembly applicable in every part of the commonwealth or to all the cities of the Commonwealth." *Id.* 432 Pa. at 611, 248 A.2d at 54, *citing Lennox v. Clark*, 372 Pa. 355, 378, 93 A.2d

834, 845 (1953). It noted, however, that this limitation concerned only laws in relation to matters of statewide concern such as health, safety, and security and not to matters affecting merely the personnel and administration policies which are of no concern to citizens elsewhere in the state.

S.Ct. at 2700. Thus, a plaintiff might be able to show from the circumstances of his or her employment that there may be an "unwritten common law" in a particular agency. *Id.*

Plaintiffs contend that such a procedure applicable to promotions does exist in the Allentown Police Department. This procedure included notice of the availability of a position, the right of all employees to apply for that position by submitting resumes, and the administration of a series of oral tests and interviews. The plaintiffs argue that if such a right to be heard exists relative to promotions, then a right to be heard must exist relative to demotions. They conclude that this established procedure created a "common law" within the department which they came to rely on, conferring on them an entitlement to the position of detective and the right to a hearing prior to any demotion from that position. Plaintiffs also point to the regulations promulgated by defendant Gable which took effect on July 21, 1982, as evidence that the putative former procedure existed. They claim that the new guidelines essentially codified prior practice and explicitly provided for hearings in the case of demotions.

I cannot accept plaintiffs' theory for several reasons. First, the procedure referred to in *Perry* that created a "common law" entitling the plaintiff therein to public employment consisted of a series of written guidelines promulgated by the state and contained in a set of printed handbooks. While the *Perry* opinion does not limit the creation of an entitlement through an implied procedure to a situation involving printed guidelines, I conclude that *Perry* should not be extended to situations like the one presented here where the implied procedure consisted of an informal loosely structured system governing only promo-tions. The plaintiffs have failed to demonstrate that any implied procedure relative to demotions exists.

Plaintiffs also argue that certain provisions of the governing labor contract provide an express written entitlement beyond the implied common law procedure. They assert that the inclusion of a grievance procedure in the contract implies that conflicts will be resolved through arbitration and that dismissals and demotions will be evaluated based upon considerations of "just cause." They allege that if the grievance arbitration provisions are to have any meaning, demotions may only be made for just cause. This, they allege, is the equivalent of a formal understanding which creates a claim of entitlement.[5]

I cannot accept this argument. Nowhere in the contract is it specifically stated that issues involving demotions are subject to the grievance and arbitration machinery. Only disputes "arising under this contract" or "involving the interpretation or application of this agreement" are subject to arbitration. Demotions of police officers are not governed by the labor contract but by statute, and are therefore not subject to the grievance machinery of the contract. Thus, no express written entitlement has been created through the inclusion of grievance and arbitration provisions in the collective bargaining agreement.

To accept plaintiffs' line of reasoning would mean that by entering into a collective bargaining agreement containing a grievance-arbitration provision, a local government entity would effectively repeal that aspect of the Third Class City Code vesting the mayor with the authority to promote or demote police officers. I find that this result flies in the face of logic and would result in localities being able to repeal acts of the Pennsylvania legislature at their whim. I refuse to accept this result.[6]

---

5. In support of their position, plaintiffs rely on defendants' argument that the plaintiffs be required to exhaust available grievance and arbitration procedures before pursuing this claim in federal court. As I have concluded that defendants' position is without support, I will not place weight on plaintiffs' reliance upon it.

6. Defendants argue that the existing labor contract not only does not create any entitlements but specifically allowed demotions without cause. They rely on the Managements Rights Clause, which states that the city retains its right to "hire, promote, retain, transfer, and assign employees in positions, the right to suspend,

Plaintiffs' final argument—that "attacks" on their reputation and integrity entitle them to the protection of the due process clause—must also be rejected. They assert that public announcements that they "deserved" demotion because of their participation in a "clique" that was undermining morale and efficiency in the department put the "good name, reputation, honor and integrity" of each of them in jeopardy, and entitled them to a hearing on the allegations.[7] *See Board of Regents v. Roth,* 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972). Plaintiffs have thus attempted to implicate the liberty interest protected by the fourteenth amendment. If they are correct and liberty interests protected by the fourteenth amendment *are* implicated, "the right to some kind of prior hearing is paramount." *Id.* at 569–570, 92 S.Ct. at 2705.

The Supreme Court has often emphasized that the concept of liberty for due process purposes should be given a broad interpretation. *Roth* at 570, 92 S.Ct. at 2705; *See also Bolling v. Sharpe,* 347 U.S. 497, 499–500, 74 S.Ct. 693, 694–695, 98 L.Ed. 884 (1954); *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). In *Roth,* however, the Court refused to find that the state's failure to rehire the plaintiff implicated his liberty interests. *Id.* 408 U.S. at 573, 92 S.Ct. at 2707. The Court recognized that liberty interests might be implicated in some termination cases, but found that the state's failure to rehire the plaintiff, a professor of political science at a state university, did not involve charges that might "seriously damage his standing and association in the community" nor impose on him a "stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities." *Id.* "Stigma to reputation alone, absent some accompanying deprivation of present or future employment is not a lib-

erty interest protected by the Fourteenth Amendment." *Robb v. City of Philadelphia,* 733 F.2d 286, 294 (3d Cir.1984) *citing Roth,* 408 U.S. at 574, 92 S.Ct. at 2707.

Plaintiffs' attempt to implicate the liberty interest protected by the due process clause must fail because they cannot demonstrate that they have been deprived of present or future employment or that the charges leveled against them have seriously damaged their standing in the community. Plaintiffs were demoted, not fired, and are not foreclosed from taking advantage of other employment opportunities. Allegations that they were demoted for being part of a "clique" that undermined morale and efficiency are not equivalent to a charge of "dishonesty or immorality" that would justify the right to a hearing. *Roth,* 408 U.S. at 574, 92 S.Ct. at 2707.

I therefore find that no liberty interest was implicated by the demotions of the plaintiffs under the fourteenth amendment and they are not entitled to a hearing on this ground.

To summarize, plaintiffs have failed to establish that a genuine issue of material fact exists with regard to their due process claims. Since they have failed to demonstrate that they had a protectable property or liberty interest in the rank of detective under the fourteenth amendment, they had no right to a pre-demotion hearing. I therefore grant defendants' motion for summary judgment on this issue.

**FIRST AMENDMENT CLAIM**

Plaintiffs assert that they were demoted for political reasons in violation of the first amendment rights. It is well settled that a state may not condition "hiring or discharge of an employee in a way which infringes on his right of political association." *Keyishian v. Board of Regents,* 385

discharge, demote or take other disciplinary action." Plaintiffs counter that this language does not state that these actions can be taken without cause but simply allocates authority over these decisions between the city and the union. I agree with the plaintiffs' interpretation. Never-

theless, I agree with defendants that demotions could be made without cause.

7. Defendants concede that plaintiffs are entitled to a name-clearing hearing if they feel their reputations were somehow tarnished, but note that plaintiffs have never asked for one.

U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967); *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). Defendants, however, argue that there is no authority holding that a demotion for political reasons, unlike a dismissal, rises to the level of a first amendment violation. Secondly, defendants assert that they have articulated legitimate reasons for the demotion of each plaintiff thereby justifying the demotions under the applicable standard.

For the reasons which follow, I will reject defendants' first argument as a matter of law. I also find that a genuine issue of material fact exists as to whether plaintiffs were demoted for political reasons. Defendants' motion is therefore denied.

■ The defendants argue that violations of the first amendment violations should be found only in situations in which a party has been discharged because of his or her political belief or association. Such a narrow interpretation of first amendment protection is not acceptable. "Political belief and association constitute the core of the activities protected by the First Amendment." *Elrod v. Burns*, 427 U.S. 347, 356, 96 S.Ct. 2673, 2681, 49 L.Ed.2d 547 (1976). As Justice Brennan emphasized in *Elrod*, "[R]egardless of the nature of the inducement, whether it be by denial of public employment or, as in *Board of Education v. Barnette*, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943), by the influence of a teacher over students ..." these beliefs should be protected. *Id.* 427 U.S. at 356, 96 S.Ct. at 2681. The *Elrod* opinion also discusses the impact of patronage dismissals on first amendment rights noting that these had the effect of imposing an "unconstitutional condition on the receipt of a public benefit" thereby implicating the rule of cases like *Perry v. Sindermann, Id.* at 358–59, 96 S.Ct. at 2682–83.

In *Perry*, the Supreme Court emphasized that even though a person had no right to a valuable governmental benefit, the government could not deny a benefit to a person because of his constitutionally protected interests, especially his interest in freedom of speech. *Perry*, 408 U.S. at 593, 92 S.Ct. at 2695. The Court explained its position as follows:

> For if the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and inhibited. This would allow the government to "produce a result which [it] could not produce directly." *Speiser v. Randall*, 357 U.S. 513, 526 [78 S.Ct. 1332, 1342, 2 L.Ed.2d 1460]. Such interference with constitutional rights is impermissible. *Id.* at 597, 92 S.Ct. at 2697.

■ It is clear from a reading of these cases that the rationale underlying the rule forbidding dismissal of a non-policymaking public employee on patronage grounds extends to the situation where such an employee is demoted for his political belief and association. Such an action constitutes denial of a benefit because of the exercise of a person's constitutionally protected rights. The plaintiffs' demotions to patrolmen, with loss of rank, a reduction in salary, and loss of prestige and responsibility certainly constitutes loss of a benefit.[8] Furthermore, the Third Circuit recently sanctioned such an interpretation of the first amendment in holding that an employer's action in transferring and refusing a promotion to an employee was sufficient to trigger a first amendment claim. *Robb v. City of Philadelphia*, 733 F.2d 286, 295 (3d Cir.1984). Plaintiffs are not, therefore, precluded as a matter of law from asserting a first amendment violation because they were only demoted and not dismissed.

---

**8.** It should be noted here that this conclusion does not conflict with my dismissal of the due process claims as a clear distinction exists between the entitlement to a benefit that gives rise to a property interest protected under the fourteenth amendment due process clause and a benefit that is protected under the first amendment. *Perry v. Sindermann,* 408 U.S. 593, 597, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570 (1972). A person cannot be denied a benefit on a basis that infringes on his or her constitutionally protected interest in freedom of speech, regardless of whether the person has a right to the benefit. *Id.*

Plaintiffs must still demonstrate, however, that a genuine issue of material fact exists with regard to this issue to survive the motion for summary judgment.

▮▮▮▮ A plaintiff alleging a denial of a benefit in violation of his or her first amendment rights must first demonstrate that he or she engaged in protected activity. It is not necessary for the plaintiff to demonstrate that his political affiliation was the sole reason for his discharge, but rather that the protected conduct was a "substantial or motivating factor" in the decision to deny the benefit. *Mount Healthy Board of Education v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977). Once a plaintiff meets this initial burden the burden then shifts to the defendant to prove by a preponderance of the evidence that the decision would have been the same in the absence of the protected right. *Id.* at 284, 97 S.Ct. at 574.

Plaintiffs contend that they were demoted for political reasons. They have submitted various affidavits supporting their contention. In their affidavits, plaintiffs cite specific incidents and statements to support their position. Included in these affidavits are their version of conversations each had with defendant Gable after learning of their dismissals; statements made by other individuals involved with, or with knowledge of the realignment in the police department, and information in support of their position that the promotions made during the realignment were also politically motivated.

Defendants contend that the demotions of Bennis and MacLean were made to break up a "clique" that was adversely affecting morale and efficiency in the police department. They rely for support on the depositions of defendants Gable and Daddona, who both deny that the demotions were politically motivated. In his deposition, Daddona alleges that the "clique" was involved in such undesirable activities as "beating up on others," "spying on other police officers," and "doing things that other police officers either can't do or shouldn't do." Deposition of J. Dad-

dona at 20–24. Daddona was unable to recall any specific incidents in support of his allegations. Gable alleges that they were involved in "intimidating other officers," "spying on other policemen," and that they had "free reign to do pretty much what they pleased." Deposition of C. Gable at 26, 50–51. Gable was also unable to link the plaintiffs with specific incidences of misconduct.

▮▮▮ I find that a genuine issue of material fact exists with regard to the specifics of plaintiffs' claim. On a motion for summary judgment, the facts should be interpreted in a light most favorable to the non-moving party. Defendants have not, by their presentation, dispelled the possibility that the demotions were politically motivated. Plaintiffs and defendants have presented two equally plausible accounts of the causes of the demotions and the issue should therefore be submitted to a jury for resolution.

## IMMUNITY

▮▮▮ I have concluded that plaintiffs have stated a valid claim under the first amendment and that genuine issues of material fact exist with regard to that claim. Defendants, however, argue that the defense of good faith immunity should absolve them of any liability if plaintiffs' claims were found to have merit. They assert that under *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), officials are shielded from liability for civil damages insofar as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person might know." *Id.* at 818, 102 S.Ct. at 2738. Thus, even defendants who violate the constitutional rights of others enjoy a qualified immunity that protects them from liability for damages unless it is found that their conduct was unreasonable under the applicable standard. *Davis v. Scherer,* —— U.S. ——, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984). Defendants rely on *Harlow* and *Davis* to argue that the applicable law was either unclear or in their favor at the time of the demo-

tions. They claim the law was unclear because of *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), which they read as giving the defendants the authority to move promptly to deal with employees who are disruptive. They argue that *Connick* gives them great discretion in dealing with employees, and because they had legitimate business reasons for taking the actions they did, they should be immune from damages.

■ I must reject this argument for several reasons. In no way can it be said that the *Connick* opinion compromises the constitutional protection afforded freedom of speech and association. Indeed, the Court reasserted the primacy of such a policy and allowed dismissal of the disruptive employee because the controversy centered on activity pertaining solely to internal office policy. Furthermore, defendants cannot possibly assert that they were not aware of the protection afforded by the first amendment.[9] Moreover, even if, as defendants claim, they believed that they had a right to dismiss plaintiffs for political reasons under *Connick* and 53 Pa.Cons. Stat.Ann. § 37002, the defense of good faith immunity would be available in this situation on a motion for summary judgment only when the record establishes that no material issue of fact exists as to whether a defendant acted in good faith. *Detz v.*

*Hoover*, 539 F.Supp. 532, 534 (E.D.Pa. 1982). I believe that plaintiffs' assertions of malice on Daddona's part raise such genuine issues of fact.

## EXHAUSTION

■ Defendants also assert that plaintiffs in civil rights actions must exhaust administrative remedies before pursuing their claim in federal court. It has been held that the availability of state remedies will defeat a civil rights claim, but this has been limited to actions based solely upon procedural due process claims where there is no allegation of any other constitutional violation. *See, e.g., Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); *Cohen v. City of Philadelphia*, 736 F.2d 81 (3d Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 434, 83 L.Ed.2d 360 (1984).[10] Once another constitutional right is implicated, as first amendment rights are in this case, a plaintiff may bring a civil rights action in federal court.[11]

## APPOINTMENT OF DEFENDANT GABLE AS CHIEF OF POLICE

Plaintiffs charge that defendant Gable was illegally appointed Chief of Police because he was not chosen from the force as required by the Third Class City Code. 53 Pa.Cons.Stat.Ann. § 37002. The defend-

9. Defendants also raised this defense with regard to the due process claims. Their position is more defensible in relation to that claim, but need not be addressed since I have already resolved the issue.

10. Plaintiffs rely on my opinion in *Cerva v. Fulmer*, 596 F.Supp. 86 (1984) for the proposition that adequate state remedies may satisfy the due process requirement and thereby foreclose a plaintiff from bringing an action in federal court only when the sole violation claimed is one of procedural due process. This is a correct interpretation. In *Cerva*, I held that no deprivation of a liberty interest under the fourteenth amendment had occurred without due process where adequate state post-deprivation remedies were available to compensate a plaintiff who alleged that excessive force was used by police officers in arresting him. The conduct complained of in *Cerva* could be adequately remedied under state tort law by the filing of an assault and battery charge for dam-

ages. I found that the state remedies were adequate to compensate the plaintiff for his loss. Clearly, my holding in *Cerva* does not apply to the instant case which involves a first amendment claim as well as a due process claim. Plaintiffs do not have adequate remedies under state law once other substantive rights are implicated.

11. This points out the inconsistency in defendants' argument as a whole, since they claim on the one hand that the collective bargaining agreement applies to this situation and that plaintiffs must exhaust its provisions, while on the other hand they argue that plaintiffs are not protected by the agreement and can be dismissed without cause and without due process protections. Such a contradictory position must be rejected. If plaintiffs may be demoted for any reason, the right to file a grievance or demand arbitration becomes a meaningless exercise.

ants claim that the plaintiffs do not have standing to raise the issue, and, even if they did, Gable was merely an inactive member of the force while on retirement and was simply restored to his previous position. I conclude, for the reasons which follow, that plaintiffs do not have standing to attack the appointment of Gable as Chief of Police and that the claim must be dismissed as a matter of law.

■ In *William Penn Parking Garage, Inc. v. City of Pittsburgh*, 464 Pa. 168, 346 A.2d 269 (1975), the Supreme Court of Pennsylvania discussed in detail the requirements that must be met by an individual in order to have standing to sue a state actor or agency. A person seeking to challenge governmental action must first show that he or she has a direct and substantial interest in the action. *Id.* 346 A.2d at 282. In this context, substantial simply means that there must be some "discernible adverse effect to some interest other than the abstract interest of all citizens in having others comply with the law." *Id.* In this context, direct means that the person must show that harm resulted from the matter of which he or she complains. *Id.* In addition to these requirements, the person must also demonstrate that a sufficient causal connection exists between the challenged action and the asserted injury. *Id.* at 283. This requirement is satisfied if it can be shown that the challenged action is the immediate rather than the remote cause of the injury. *Id.*

■ Plaintiffs argue that although the actual demotions were made by Mayor Daddona, they were injured in fact by Gable's appointment because he was involved in the decision to demote them. In applying the *William Penn* standards to their claim, it must first be determined if the injury is substantial. This requirement is satisfied in that the injury complained of involves an interest other than the "abstract interest of all citizens in having others comply with the law." Plaintiffs fail, however, to satisfy the requirement that the injury be direct, since it cannot be said

that their demotions resulted from the appointment of Gable. The mayor has sole authority to demote police officers. Gable may have recommended their demotions, but it was the mayor and not Gable who made the changes. Plaintiffs have also failed to satisfy the requirement that the action complained of be an immediate rather than a remote cause of the injury. The appointment of Gable was not the immediate cause of the action taken against the plaintiffs. If plaintiffs were demoted for their political beliefs as they claim, Mayor Daddona would have taken this action regardless of whom he appointed as Chief of Police. The causation requirement is simply not satisfied because the injury in fact flows from the mayor and not Gable. Moreover, if Gable were involved in that decision at all, the decision is not one in the same event as Gable's appointment by Daddona, rather it is a separate act.

The plaintiffs have therefore failed to satisfy the prerequisites necessary to establish standing to challenge the appointment of defendant Gable as chief of police. Because they do not have standing, the rest of their argument need not be addressed.

An appropriate order follows.

### ORDER

NOW, December 10, 1984, upon consideration of defendants' motion to dismiss or for summary judgment, the memoranda of law submitted by the parties and for the reasons stated in the accompanying memorandum, IT IS ORDERED that:

1. Defendants' motion for summary judgment as to the fourteenth amendment claim is GRANTED.

2. Defendants' motion to dismiss or for summary judgment as to the first amendment claim is DENIED.

3. Defendants' motion to dismiss or for summary judgment as to plaintiffs' challenge to the appointment of defendant Gable as Chief of Police is GRANTED.