**Anthony E. DeFIORE**

v.

**Joseph C. VIGNOLA.**

**Civ. A. No. 93–1156.**

United States District Court,
E.D. Pennsylvania.

Nov. 8, 1993.

**250**

Leonard Zack, Leonard Zack & Associates, Philadelphia, PA, for plaintiff.

E. Jane Hix, Asst. City Sol., Philadelphia, PA, for defendant.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

This case is once again before the Court upon motion of the Defendant, Joseph C. Vignola, for summary judgment. For the reasons which follow, the motion is denied.

## I. HISTORY OF THE CASE

This case essentially arose in June, 1991 when the plaintiff, Anthony DeFiore, joined the staff of an organization called "Leadership for Philadelphia's Tomorrow," the alleged purpose of which was to ensure the election of Joseph C. Vignola to the position of City Councilman for Philadelphia's First District. Defendant was thereafter elected to that position in November, 1991 and formally took office in January, 1992. Prior to Mr. Vignola's election, the plaintiff had been a supporter of and was employed by James Tayoun, Vignola's predecessor, as his Director of Constituent Services. After Mr. Vignola's assumption of his city council seat, Mr. DeFiore again resumed his former constituent services position under Vignola and worked in that capacity in Defendant's City Hall office until November 16, 1992 when Defendant terminated him.

By way of his complaint, Plaintiff contends that he was unlawfully terminated on the basis of his political alliance with Tayoun in violation of public policy and his right to free political association as protected by the First and Fourteenth Amendments to the United States Constitution. Defendant's motion for summary judgment, in turn, is premised upon the fact that the plaintiff has failed to support these allegations or to show that he was anything other than an employee-at-will and that even assuming that the plaintiff was not terminable-at-will, Defendant had just cause to fire him for insubordination.

## II. DISCUSSION

### A. Legal Standards Applicable to Motions for Summary Judgment

Federal Rule of Civil Procedure 56(c) provides that summary judgment is properly entered in favor of a movant "if the pleadings, depositions, answers to interroga-

tories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Under this rule, the district courts are to look beyond the bare allegations of the pleadings to determine if they have sufficient factual support to warrant their consideration at trial. *Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287 (D.C.Cir.1988), *cert. denied,* 488 U.S. 825, 109 S.Ct. 75, 102 L.Ed.2d 51 (1988). As a general rule, the party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and of identifying those portions of the pleadings, depositions, interrogatory answers, admissions and any affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Celotex v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In ruling upon a summary judgment motion, the court must assume the truth of the non-movant's evidence, drawing all reasonable and justifiable inferences that may arise therefrom in favor of that party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Lockley v. Chao,* 812 F.Supp. 246, 248–249 (D.D.C.1993).

■ This does not mean, however, that the non-moving party may rest upon the allegations contained in his or her pleadings in defense of a summary judgment motion. To the contrary, Fed.R.Civ.P. 56(e) states, in relevant part:

> "When a motion for summary judgment is made and supported as provided for in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, may be entered against the adverse party."

Thus, while the burden of demonstrating the absence of genuine issues of material fact is initially on the moving party, once such a showing has been made, the non-movant must present evidence through affidavits, depositions or otherwise which comprise of a showing sufficient to establish the existence of every element essential to that party's case. *See: Celotex v. Catrett,* 477 U.S. at 321–322, 106 S.Ct. at 2552–2553; *Keyes v. National Railroad Passenger Corp.,* 756 F.Supp. 863 (E.D.Pa.1991); *Applications Research Corp. v. Naval Air Development Center,* 752 F.Supp. 660 (E.D.Pa.1990).

### B. *First Amendment Right to Freedom of Association*

■ It is well settled that a state may. not condition hiring or discharge of employees in a way which infringes on their right to political association. *Bennis v. Gable,* 604 F.Supp. 244, 251 (E.D.Pa.1984). Indeed, the courts have recognized that the basic right of political association is assured by the First Amendment to the United States Constitution and is protected against state infringement by the Fourteenth Amendment. *Id.,* at 252 citing *Elrod v. Burns,* 427 U.S. 347, 356, 96 S.Ct. 2673, 2681, 49 L.Ed.2d 547 (1976). Freedom of association includes the right to engage in group advocacy of various political beliefs and the right to organize effectively, assemble, speak, write and proselytize as individuals see fit. *Orloski v. Davis,* 564 F.Supp. 526, 533 (M.D.Pa.1983).

■ It is therefore equally well established that conditioning hiring decisions on political belief and association plainly constitutes an unconstitutional condition. *Rutan v. Republican Party of Illinois,* 497 U.S. 62, 110 S.Ct. 2729, 2739, 111 L.Ed.2d 52 (1990); *Elrod v. Burns, supra,* 427 U.S. at 362–363, 96 S.Ct. at 2684. This condition, however, is not without limits. To the contrary, where it can be shown that party affiliation is an acceptable requirement for some type of government employment or that an employee's private political beliefs would interfere with the discharge of his public duties, his First Amendment rights may be required to yield to the State's vital interest in maintaining governmental effectiveness and efficiency. *Branti v. Finkel,* 445 U.S. 507, 516, 100 S.Ct. 1287, 1294, 63 L.Ed.2d 574 (1980) citing *Elrod v. Burns,* 427 U.S. at 366, 96 S.Ct. at 2686. Thus, the courts have held that "a

nonpolicymaking, nonconfidential government employee" cannot be discharged on the sole ground of his or her political beliefs but that an employee who "acts as an advisor or formulates plans for the implementation of broad goals" may be discharged upon a proper showing. *Zold v. Township of Mantua,* 935 F.2d 633, 635 (3rd Cir.1991) citing *Elrod,* 427 U.S. at 367–368, 375, 96 S.Ct. at 2686–2687, 2690; *Brown v. Trench,* 787 F.2d 167, 168 (3rd Cir.1986).

The task of determining whether a position is one in which political affiliation is a legitimate factor to be considered when making a personnel decision is often difficult and one which requires careful scrutiny of the specific facts of each individual case. *Stott v. Haworth,* 916 F.2d 134, 141 (4th Cir.1990); *Ness v. Marshall,* 660 F.2d 517, 520–521 (3rd Cir.1981). Initially, of course, an employee who contends that an adverse employment action was taken against him based upon the exercise of his association rights must show that he was engaged in constitutionally protected conduct, which conduct was a substantial or motivating factor in the government employer's decision. *Asko v. Bartle,* 762 F.Supp. 1229, 1231 (E.D.Pa.1991). Thereafter, the defendant has a substantial burden of demonstrating that political affiliation is an appropriate requirement for the effective performance of the public office in question and that it has an "overriding interest" such as would validate encroachment on the employee's First Amendment rights. *Burns v. County of Cambria, PA,* 971 F.2d 1015, 1022 (3rd Cir.1992); *Zold v. Township of Mantua, supra.,* 935 F.2d at 635. As outlined by the Fourth Circuit Court of Appeals in *Stott v. Haworth, supra,* at 141–142:

A threshold inquiry, which derives from *Branti,* involves examining whether the position at issue, no matter how policy-influencing or confidential it may be, relates to "partisan political interests ... or concerns." 445 U.S. at 519, 100 S.Ct. at 1295. That is, does the position involve government decisionmaking on issues where there is room for political disagreement on goals or their implementation? Otherwise stated, do party goals or programs affect the direction, pace, or quality of governance?

If this first inquiry is satisfied, the next step is to examine the particular responsibilities of the position to determine whether it resembles a policymaker, privy to confidential information, a communicator, or some other office holder whose function is such that party affiliation is an equally appropriate requirement. We note that in conducting this inquiry, courts focus on the powers inherent in a given office, as opposed to the functions performed by a particular occupant of that office.... (citations omitted) The relevant inquiry is to the function of the public office in question and not the actual past duties of the particular employee involved ...

Applying all of the preceding principles to the matter at bar, we note that the plaintiff's affidavit and deposition testimony indicate that he supported former city councilman Jimmy Tayoun, that he considers himself to be a "member of the Tayoun democrats," and that the "Tayoun democrats" hold a different political idealogy from that held by the "Vignola democrats." Both councilman Vignola and former councilman Tayoun testified at their depositions that they hold different political philosophies and that they conducted their city council business differently from one another. Accordingly, we have no difficulty finding that the plaintiff's partisan political views differ from those held by his former employer, Vignola.

Insofar as the nature of his previous employment is concerned, Mr. DeFiore's affidavit states that the constituent services position which he held under both Councilman Tayoun and Councilman Vignola was a non-policymaking, non-discretionary position in which he had no supervisory authority or authority to engage in any independent action on behalf of the councilman. Likewise, former councilman Tayoun testified that the constituent services position did not involve policy making—it involved handling complaints and requests from the councilman's constituency and interfacing with any agency necessary in an attempt to solve the problem on behalf of the individual constituent. Mr. Tayoun further stated that Mr. DeFiore had

a "big job because you build your strength as an elected official on the work of your constituent representative." According to the affidavit of Arthur Holst, Mr. Vignola's Chief of Staff, the Director of Constituent Services is in "a position to affect the success of Councilman Vignola ..." Thus, while it appears uncontroverted that the plaintiff's former job did not involve policymaking activity per se, there exists a question of material fact as to whether or not it involved government decisionmaking on issues where there is room for political disagreement on goals or their implementation. Accordingly, this court cannot find as a matter of law that political affiliation is a necessary or appropriate requirement for the effective performance of the constituent services position from which Mr. DeFiore was terminated.

Similarly, there is conflicting evidence as to whether or not Mr. Vignola had just cause to terminate Mr. DeFiore. Again, while Mr. Vignola's deposition testimony and the affidavit of Mr. Holst indicate that they overheard the plaintiff using inappropriate language on the telephone to several constituents and other city councilpersons and use offensive language concerning Mr. Vignola, the plaintiff's testimony and the affidavits of Matthew Cianciulli, refute and deny these allegations. We consequently find that this question, too, is properly resolved by a jury. For all of the foregoing reasons, defendant's motion for summary judgment must be denied and the attached order is hereby entered.

### ORDER

AND NOW, this 8th day of November, 1993, upon consideration of Defendant's Motion for Summary Judgment, it is hereby ORDERED that the Motion is DENIED for the reasons set forth in the preceding Memorandum.